S. A. JONAS ET AL. *v.* A. E. FLANNIKEN.

69 577
) 305

69 577
f90 627

1. ADVERSE POSSESSION. *Ownership and possession in severalty.*

As against those claiming to own with defendant an undivided interest in land, the statute of limitations, under which ten years' adverse possession confers title, does not begin to run until there is claim of title as sole owner, and possession in severalty, by the defendant or some one under whom he claims.

2. TAX-TITLE. *Lapse of time. Code* 1871, § 1709. *Repeal.*

Section 1709, code 1871, limiting actions to invalidate tax-titles to three years from the day of sale, applies to tax-sales made in March, 1876. Its subsequent repeal, before the expiration of three years, did not affect the right of purchasers at such sale. *Gibson* v. *Berry,* 66 Miss., 515.

3. SAME. *Code* 1871, § 1709. *What defects cured.*

If there has been an assessment by the assessor, and levy of taxes based thereon, and a sale for taxes, said statute applies, whether the assessment was regular or not, and whether the sale was valid or not.

4. TAX-TITLE. *Right of co-tenant to acquire. Code* 1880, § 539.

One cannot acquire a tax-title to the defeat of his co-tenant. Nor can a co-tenant who has acquired a tax-title invoke the three years' statute of limitations which is prescribed by code § 539, 1880, in favor of those in possession under tax-titles. *McGee* v. *Holmes,* 63 Miss., 50.

5. SAME. *Power to acquire. Statute of limitations. Code* 1871, § 1709. .

Where the holder of a tax-title afterwards supplements it by purchasing the undivided interests of certain persons in the land, and then conveys the land to his wife, the latter is not, thereby, prevented from setting up . the tax-title against the co-tenants of such persons; nor does such purchase stop the running of the three-years' statute of limitations prescribed by § 1709, code 1871, in favor of the tax-title.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Chancellor.

The bill in this case seeks a sale for partition of certain land in Monroe county, consisting of forty acres in section 27

and the adjoining forty acres in section 26, township 13, range 17. On the land in section 27 are situated certain mineral springs, known as Greenwood Springs, and a hotel and cottages to accommodate visitors. The original bill was filed February 23, 1887, by S. A. Jonas, R. E. Houston, L. E. Houston and R. O. Reynolds, against Mrs. A. E. Flanniken and M. J. Wright, and alleged that complainants owned, with right of possession, an undivided one-fourth of one-sixth interest in the land in section 27, and an undivided one-half interest in the land in section 26, and that Mrs. Flanniken claimed to be the owner of the remaining interests in both tracts, and that Wright was in possession of the land under a lease from her for a term of years. This lease expired pending the litigation, and need not be further mentioned.

The defendants filed a demurrer to the bill, which was overruled, and Mrs. Flanniken answered, denying complainant's title, and alleging her separate ownership in fee of both tracts of land.

No further steps seem to have been taken until June 19, 1889, when an amended bill was filed. R. O. Reynolds, in the meantime, had died, and Mrs. S. B. Reynolds was his sole legatee, and, as such, joined in the amended bill.

After the original bill was filed, the complainants therein learned that many other persons claimed certain interests in the land, and these persons, to the number of fifteen, were joined as complainants in the amended bill, which was against the same defendants, and sought a sale for partition. Afterwards it was discovered by complainants that L. E. Houston and R. O. Reynolds, before the filing of the original bill, had conveyed their interest in the lands to one Howard, and that the title so conveyed had passed to the defendant, Mrs. Flanniken; and as to complainants, L. E. Houston and Mrs. S. B. Reynolds, the bill was dismissed, and they withdrew from the litigation.

It would be extremely difficult to state the history of the title claimed in the bill to have become vested in the several

complainants.  Both tracts of land were entered originally
by several persons jointly, and the undivided interests thus
acquired have been, by successive conveyances and inherit-
ance, vested in the complainants, who claim fractional inter-
ests varying in quantity from $\frac{1}{3}$ to $\frac{1}{288}$ interest in one or both
tracts of land.   However, it becomes unnecessary to set out
the chain of title through which these parties claim, except
so far as it may have connection with the title claimed by the
defendant.   It will be seen from the opinion that this court
finds, from the record, that the title of the several complain-
ants to section 27, even if originally good, has been lost, and
that, as to the land in section 26, the complainants have
shown a right to relief.

The history of defendant's tax-title to the land in section
27 is as follows:   It was sold to the state, January 3, 1876,
for the taxes of 1875, and the state's title was conveyed by
the auditor to H. C. Mendenhall, May 23, 1878.   Menden-
hall conveyed it by quitclaim to J. W. Howard, April 5, 1879,
and Howard conveyed it by quitclaim deed to Mrs. M. A. E.
Jørdan, June 20, 1879, who in 1882 conveyed it to defendant,
Mrs. Flanniken.   Thus, the tax-title acquired by Menden-
hall May 23, 1878, became vested in Mrs. Flanniken.

Defendant likewise obtained a tax-title to the land in sec-
tion 26.   This was sold to the state, March 4, 1878, for the
taxes of 1877, and was bought from the state, April 15, 1879,
by R. O. Reynolds.   The latter, jointly with L. E. Houston,
had long before that acquired an interest in the lands in both
section 26 and section 27 in the following manner:  One J. D.
McAlister originally owned or claimed an undivided one-
sixth interest in the land in section 27, and this interest was
purchased, May 14, 1869, by S. A. Jonas, R. E. Houston, R.
O. Reynolds and L. E. Houston.   These persons likewise ob-
tained a conveyance of said fractional interest in 1870 from
the sheriff, who had levied on the interest of J. D. McAlister
in the forty acres in section 27, and sold the same.   At the
same time the sheriff conveyed another fractional interest

therein to Mary C. McAlister and J. Mays jointly. After-
wards, in 1873, J. D. McAlister and Mary C. McAlister con-
veyed their interest in the land in section 27, and also a one-
fourth interest in the land in section 26, to C. M. Jordan.
Just how McAlister acquired title does not appear, but it is
admitted that he and Mays built the hotel and erected other
improvements on the land in 1869, and remained in posses-
sion that year, and that thereafter McAlister alone was in
possession until the sale to C. M. Jordan.

On May 26, 1874, Mary C. McAlister, J. D. McAlister and
C. M. Jordan and wife executed a deed of trust on their frac-
tional interest in the land in section 26 and section 27 to Q.
O. Eckford, trustee, to secure a debt due to L. E. Houston
and R. O. Reynolds. Default having been made, Eckford,
the trustee, foreclosed and conveyed said fractional interest
in the land to R. O. Reynolds, by deed dated June 14, 1879.
It will be remembered that R. O. Reynolds, on April 15, 1879,
had acquired the state's title to the land in section 26, but
previous to this, in 1869, Reynolds, jointly with L. E. Hous-
ton, R. E. Houston and S. A. Jonas, had purchased, and held
a deed to, a half-interest in the land in section 26, from one
Dillworth, who had derived his title from one of the original
patentees. Thus, it will be seen that Reynolds, in addition
to the tax-title, had acquired title to fractional interests ·in
one or both tracts of land from several sources, namely:
(1) under deed from Dillworth in 1869; (2) under the afore-
said conveyance from McAlister and wife, May 14, 1869; (3)
by said sheriff's deed in 1870; (4) by the deed from Eck-
ford, trustee, June 14, 1879.

On June 16, 1879, L. E. Houston and R. O. Reynolds exe-
cuted a quitclaim deed of all their interests in the land in
sections 26 and 27 to J. W. Howard, who conveyed the same
by a like deed, June 20, 1879, to Mrs. M. A. E. Jordan, wife
of the said C. M. Jordan, she being in possession at the time,
and the title thus acquired was conveyed by Mrs. Jordan, in
1882, to the defendant, Mrs. Flanniken. At the same time

R. O. Reynolds quitclaimed to Mrs. Flanniken his interest in the land in section 26, presumably for the purpose of removing any doubts or errors that might inhere in the other conveyances through which she had derived his title.   Howard was never in possession of the land, but Mrs. Jordan, after her conveyance from Howard, remained in possession until it was surrendered to Mrs. Flanniken.

The deed from L. E. Houston and R. O. Reynolds did not purport to convey any particular interest, but was a quit-claim deed to both tracts of land; and it will be observed that the deed from Howard to Mrs. M. A. E. Jordan, defendant's grantor, was executed June 20, 1879, lacking but one day of being ten years before the filing of the amended bill.

It is contended by complainants that the tax-title to the land in section 27, relied on by the defendant, is void, because the assessment-roll had not been approved by the board of supervisors, and because the term of office of the sheriff and tax-collector who made the sale expired on the very day of the sale, being the day on which his successor qualified, and that he was without authority to sell.   It was also urged that defendant could not set up the tax-titles to the land in section 27, because her vendor, Mrs. Jordan, was the wife of C. M. Jordan, who, being a co-tenant of the land, was disqualified by the tax-title; and that she was precluded from availing of the tax-title to the land in section 26, because R. O. Reynolds, who purchased from the state, was at the time likewise a co-tenant and mortgagee.

On the other hand, it is contended in behalf of the defendant, that, before the filing of the original or amended bill, she, and those under whom she claims, had been in open and adverse possession for more than ten years; also, that complainants were precluded from attacking her title, based upon the sales for taxes, because of the provisions of § 1709 of the code of 1871, and § 539 of the code of 1880.   The former statute provides that no suit shall be brought to invalidate any tax-title after three years from the time of sale; and the

latter statute provides that actual occupation for three years, after one year from the day of sale, of any land held under a conveyance by a tax-collector, in pursuance of a sale for taxes, shall bar any suit to recover the land, or assail the title because of any defect in the sale of the land for taxes, or any precedent step to the sale.

The defendant also contends that complainants are estopped to assail her title, because, with knowledge of her purchase and claim, they permitted her to expend large sums in improving the property, without making known their adverse claim. There was some evidence tending to establish this fact.

Finally, she contends that when she acquired the title she was ignorant of any of the infirmities therein, growing out of the disability of Reynolds or Mrs. Jordan to acquire a tax-title because of their alleged co-tenancy of the land.

The decree of the court was in favor of the defendant and dismissed the bill, and from this decree complainants have appealed.

*Houston & Reynolds*, for appellants.

One tenant cannot, against his co-tenants, acquire a tax-title. *Fox* v. *Coon*, 64 Miss., 465; *Harrison* v. *Harrison*, 56 *Ib.*, 174; *Allen* v. *Poole*, 54 Miss., 323; *Wise* v. *Hyatt*, 68 *Ib.*, 714.

It cannot avail to say that Mrs. Jordan bought the tax-title. If the husband is disqualified, the wife, at least in equity, will be treated as also disqualified to buy. Freeman on Co-tenancy, § 160; *Cameron* v. *Lewis*, 59 Miss., 134; *Carter* v. *Bustamente*, *Ib.*, 559; *Robinson* v. *Lewis*, 68 *Ib.*, 69. If the purchaser of a tax-title is disqualified, the title of his vendee is also void. *McGee* v. *Holmes*, 63 Miss., 50.

The tax-title, based upon the sale of January 3, 1876, is incurably void, because the assessment was never approved by the board of supervisors. Without such approval, there cannot be an assessment, and, as an assessment is a constitu-

tional prerequisite, the defect cannot be cured by the three-years' statute of limitations contained in § 1709 of the code of 1871 and § 539 of the code of 1880. It is settled that these sections cannot be invoked where the purchaser of a tax-title was disqualified to buy. Neither can they be invoked where there has not been a valid assessment. Black, Tax-titles, § 27; *Dunn* v. *Winston,* 31 Miss., 137; *Davis* v. *VanArsdale,* 59 *Ib.,* 369; *Stoval* v. *Connor,* 58 *Ib.,* 138.

Section 539, code 1880, cannot apply, because enacted after the sale in 1876. *Kaiser* v. *Harris,* 63 Miss., 590; *Dingey* v. *Paxton,* 60 *Ib.,* 1038.

Section 1709 of the code of 1871 cannot be invoked, because it was repealed three months after the sale of January 3, 1876, and before absolute title had vested in the state by the lapse of three years after one year from the date of sale. For an additional reason, the tax-title acquired by R. O. Reynolds cannot be set up. At the time, he was a mortgagee of an interest in the property. *McLaughlin* v. *Green,* 48 Miss., 175.

Defendant cannot claim to have bought without notice of the defects in the title, or the disabilities of the purchasers of the tax-title. The record, containing the chain of title, was sufficient to give her constructive notice. *Gordon* v. *Manning,* 44 Miss., 756; *Gordon* v. *Sizer,* 39 *Ib.,* 820; *Allen* v. *Poole,* 54 *Ib.,* 323; *Money* v. *Ricketts,* 62 *Ib.,* 209.

*Gilleylen & Leftwich,* on the same side.

The defense of the ten-years' statute of limitations is not sustained. There is no pretense of an adverse claim prior to the tax-deeds. If we grant that an adverse claim for the tax-titles were acquired, ten years did not elapse before the filing of the original and amended bills.

The tax-sale made by the sheriff January 3, 1876, was void, because the term of office of the sheriff had expired. By law, his successor became sheriff on that day. This sale was a nullity. *Griffing* v. *Pintard,* 25 Miss., 173.

It cannot be denied that the roll was never approved. There was, therefore, no valid assessment, and the tax-sale was void, and could not be cured by mere statutes of limitation such as are here invoked. See *Virden* v. *Bowers*, 55 Miss., 1; *Patterson* v. *Durfey*, 68 *Ib.*, 779; *Nevin* v. *Baley*, 62 *Ib.*, 433; *Davis* v. *VanArsdale*, 59 *Ib.*, 367.

It is evident that the absolute purchase by Howard was by Jordan's procurement, for he immediately deeded the land to Jordan's wife. Under the circumstances, since the Jordans were interested, the purchase would operate as a redemption. *Cameron* v. *Lewis*, 56 Miss., 601; Black on Tax-titles, § 146; 36 Col., 136.

Jordan was in possession, and his wife could not acquire a tax-title and set it up against co-tenants. *Robinson* v. *Lewis*, 68 Miss., 69.

It is manifest that defendant cannot claim, under the tax-title, the land in section 26. She derives solely through the tax-title of R. O. Reynolds, who was both a tenant in common and a mortgagee, and disqualified to buy. There is absolutely no evidence to support the defense of estoppel.

*George G. Paine, E. H. Bristow* and *R. C. Beckett*, for appellee,

Filed separate briefs, discussing, at great length, all the questions presented by the record, and making, among others, the following points:

1. Complainants are barred by the ten years' adverse possession of defendant and her vendors. She acquired title from Mrs. Jordan, who purchased from Howard June 16, 1879. The amended bill was not filed until June 19, 1889. Complainants have not shown a perfect title in themselves. They deraign from McAlister, who is not shown to have had any title. The title claimed to have been derived from McAlister by complainants, could not be strengthened by lapse of time, since it was not coupled with possession. But, so far as that title was acquired by defendant, McAlister's possession could

be tacked on to that of his vendee and sub-vendees until a title is reached in a vendee in possession at the expiration of the ten years' continuous adverse possession. In such case there would only be a constructive co tenancy—one forced on the last vendee by operation of law—and the statute of limitations would commence running from the date of his occupation. The distinction is clear between such a case and that of tenants in common, who hold under one deed or by contract. *Harrison* v. *Harrison,* 56 Miss., 174; *Cooper* v. *Cooper,* 61 Miss., 676.

The conveyances from McAlister to Jordan, and from Jordan to Eckford, and from Eckford to Reynolds, and from Houston & Reynolds to Howard, were all hostile to the title now asserted by complainants. The grantees exercised control, and rented the lands, and were entitled to invoke the ten-years' statute.

2. Without admitting the force of any of the objections to the tax-title based on the sale, January 3, 1876, it is sufficient to say that under § 1709 of the code of 1871, the lapse of three years before its assailment had barred any attack. *Nevin* v. *Baley,* 62 Miss., 433. And this statute applies whether the party is in possession or not. *Sigman* v. *Lundy,* 66 Miss., 522. And it applies to tax-sales made in January, 1876. *Gibson* v. *Berry, Ib.,* 515.

As to the land in section 26, it is insisted that R. O. Reynolds was a tenant in common of the land, and, therefore, could not buy the tax-title. But the defendant was not a tenant in common when she bought from Mrs. Jordan. She bought and claimed the whole estate, and, if a tenant in common at all, was such by operation of law by a co-tenancy forced upon her, and not arising through any deed or contract. We insist, therefore, that under § 539, code 1880, defendant's title to this land became unassailable. Defendant had no notice of any defect in the title based upon the disability of Reynolds to buy. She purchased from Mrs. Jordan, who, the record showed, held by an independent tax-title.

If it be claimed that she was affected by notice of every thing in the recorded chain of title, it is also true that she had a right to rely on the recitals of the several deeds as true, unless she knew to the contrary. *Hiller* v. *Jones*, 66 Miss., 636.

If she had pursued her inquiry as to the title, she would have found that the tax-title was valid, or, if not valid, that three years had elapsed since the purchase by Mrs. Jordan, and would have concluded that the possession for that time had made the title unassailable.

As to the land in section 27, it cannot be contended that Mrs. Jordan was disqualified to buy the tax-title. Mendenhall, when he bought the tax-title, was not a tenant in common. Neither was Howard when he bought from Mendenhall. Subsequent purchases of the interest of the co-tenants could not affect the title derived from the statute; hence there was no buying in by the wife of a tenant in common, and *Robinson* v. *Lewis*, 68 Miss., 69, has no application. Jordan was never a tenant in common, and might himself have purchased the tax-title.

CAMPBELL, C. J., delivered the opinion of the court.

The defense on the ground of estoppel fails for want of evidence to support it.

The ten-years' statute of limitations is not available to the defendant, because both the amended and original bills were exhibited before the expiration of ten years from the inception of the title in severalty held by her as grantee of Mrs. Jordan, whose title as sole owner was vested in her on June 20, 1879, by the conveyance of Howard. Prior to that the land had not been held in severalty by any person under whom the defendant claims.

The title of the defendant to the forty acres in section 27 was unassailable at the time of bringing this suit, by reason of the lapse of three years from the date of the sale to the state for taxes. The sale to the state was made January 3,

1876, and § 1709 of the code of 1871 was then in force, and its subsequent repeal did not prevent the operation of the prescribed period to render the title unassailable. *Gibson* v. *Berry*, 66 Miss., 515; *Sigman* v. *Lundy*, 66 Miss., 522.

It is immaterial whether the sale was valid or not, or whether the assessment was regular in all respects. There was an assessment by the assessor, and a levy of taxes based on this assessment, and a sale for taxes; and these things, with the three years, rendered the tax-sale unassailable. The law was unnecessary as to valid sales for taxes, and was enacted to cure irregularities, such as are alleged against this sale.

The proposition that the defendant cannot invoke the protection of the statute referred to, because her vendor, Mrs. Jordan, was the wife of C. M. Jordan, who was co-tenant of the land, is not maintainable. The facts are that Mendenhall purchased the land from the state May 23, 1878, and coveyed it to Howard April 5, 1879, and he, having acquired, *after this*, another title by conveyance from Reynolds and Houston of this land, conveyed to Mrs. Jordan, who conveyed to the defendant. As observed, the state title was first acquired by Howard, who afterwards bought of Houston and Reynolds their title, which was obtained by the conveyance of Eckford, trustee in the deed of trust executed by McAlister and wife and C. M. Jordan, which conveyance by Eckford to Reynolds was made June 14, 1879, and before the conveyance by Howard to Mrs. Jordan. When Howard conveyed to Mrs. Jordan, all interest of C. M. Jordan in this land had ceased. He was then a stranger to the title, and might himself have purchased.

Mrs. Jordan had no connection with the title prior to the conveyance to her by Howard, who, as stated, first acquired title from Mendenhall, who purchased from the state. As Howard obtained, by his purchase from Mendenhall, the state's title, his subsequent purchase of the title of Reynolds, who held under Jordan, did not prevent the running of the three-

years' statute prescribed by § 1709 of the code of 1871, in favor of the tax-title, or affect his grantee, Mrs. Jordan, with disability to invoke this statute because there was united with the tax-title one which came from her husband as co-tenant. Supplementing the tax-title with another did not impair it, and the holder of it lost nothing by reason of having another. The defendant, who purchased of Mrs. Jordan, in whom was vested, by Howard's conveyance, the tax-title the state had conveyed to Mendenhall, and he had conveyed to Howard before Houston and Reynolds had conveyed to him their title, had the right to look to that, the older, as the principal source of title, and rely on it with all its incidents unimpaired by any infirmity in any supplementary title held by a grantor.

The position of the defendant as to the land in section 26 is different from that occupied as to the other. She acquired this as well as the other by purchase from Mrs. Jordan it is true, but Mrs. Jordan acquired it by the conveyance of Howard, who had no title to it except as obtained from Houston and Reynolds, who were co-tenants of the land with others. The inquiry is, "Did three years' actual occupation of this land vest title by virtue of § 539 of the code of 1880?" Mrs. Jordan, by the conveyance of Howard, acquired no other title but that of Houston and Reynolds to this land. It was sold to the State for taxes, March 4, 1878, and purchased from the state by Reynolds, April 15, 1879. He was a co-tenant of this land, and, as such, disabled to acquire title in this way as against co-owners. Howard, Mrs. Jordan, his grantee, and the defendant, her grantee, took this land charged with notice, because shown by the record of the title purchased, that Reynolds was a co-tenant, and disabled to acquire title for himself by purchase of the tax-title, and they, severally, held this title as Reynolds did, and, because of this, the defendant cannot invoke successfully § 539 of the Code of 1880. *McGee* v. *Holmes*, 63 Miss., 50.

As to the forty acres in section 26, the defendant is not protected by lapse of time, and as to that the complainants are entitled to relief.

*The decree is reversed as to the land in section 26, and affirmed as to the other, and the cause is remanded for further proceedings in the chancery court in conformity to this opinion.*