Griggs, et al. *v.* Griggs, et al.

Oct. 26, 1953

No. 38801 40 Adv. S. 28 67 So. 2d 450

434

*William P. Cassedy,* Brookhaven, for appellants.

436

*Cohn, Hobbs & Hobbs,* Brookhaven, for appellees.

KYLE, J.

Boston Griggs and others, complainants, filed their bill in the Chancery Court of Lincoln County on April 24, 1945, against A. M. Griggs, Lester Blue and the Humble Oil and Refining Company, as defendants, seeking to establish their rights of ownership as tenants in common with the defendant, A. M. Griggs, in two 40-acre tracts of land described as the West Half of the Northwest Quarter of Section 20, Township 8 North, Range 5 East, to which A. M. Griggs had obtained a forfeited tax land patent from the State on September 17, 1940. The complainants in their bill also asked for a sale of the land for a division of proceeds among the several cotenants according to their respective interests.

A. M. Griggs and the Humble Oil and Refining Company filed separate answers, and incorporated therein pleas of non-joinder of necessary parties and general demurrers. Lester Blue, although properly summoned, did not appear either in person or by an attorney. The Humble Oil and Refining Company, which had been named as a defendant in the original bill as the holder of an oil, gas and mineral lease on the above described land, executed by A. M. Griggs and his wife to H. Guinn Lewis in 1940, permitted its lease to lapse on October 9. 1948, and thereafter filed a supplemental answer disclaiming any further interest in the suit; and an order was entered dismissing the suit as to the Humble Oil and Refining Company. Boston Griggs died before the case was tried, and an order was entered reviving the suit as to him in the names of his heirs. A. M. Griggs also died before the case was tried, and an order was entered substituting his heirs as parties defendant. An answer and a general demurrer were filed by A. M. Griggs' heirs; and to avoid delays in the making of further amendments to the pleadings an agreed stipulation was filed showing the relationship of the parties to Gilford Griggs, deceased, and Emily Griggs, deceased, who were the former owners of the two 40-acre tracts, and the ownership of the land at the time of the tax sale in 1931. The cause was heard at the May, 1952, term of the court, upon the amended pleadings, process and proof, and a decree was rendered in favor of the complainants, establishing their claims of ownership and ordering a sale of the land for a division of proceeds among the several cotenants according to their respective interests as fixed by the terms of the decree. From that decree the defendants have prosecuted this appeal.

The record shows that the 40-acre tract of land described as the Northwest Quarter of the Northwest Quarter of Section 20, Township 8 North, Range 5 East, was owned by Gilford Griggs and Emily Griggs, husband

and wife, as tenants in common, at the time of the death of Gilford Griggs on March 18, 1910. The remaining 40-acre tract described as the Southwest Quarter of the Northwest Quarter of said Section 20 was owned by Emily Griggs, who had inherited the same from her mother. Gilford Griggs died intestate and left surviving him as his heirs at law his wife, Emily Griggs, and five children, namely, Boston Griggs, A. M. Griggs, Esther Griggs, Emily Griggs and Cynthia Griggs, and one grandchild, the above named Lester Blue, who was the son of a deceased daughter of Gilford Griggs and his wife, Emily Griggs; and each of the above named parties inherited an undivided one-seventh interest in Gilford Griggs' estate.

Emily Griggs, the surviving widow of Gilford Griggs, who is referred to in the record as Emily, the elder, died on September 20, 1933, and left surviving her as her heirs at law the above named five children of Gilford Griggs, and the above named grandchild, Lester Blue, and also one illegitimate son, Isom Brown, each of whom, according to the stipulation filed as a part of the record in this case, inherited an undivided one-seventh interest in her estate.

After the death of Emily Griggs, her daughter, Cynthia Griggs, died, and left surviving her as her only heir, one illegitimate child, Emma Thompson. Isom Brown also died sometime after the death of his mother, and left surviving him a widow and four children, all of whom were named as parties complainant in the original bill of complaint. Boston Griggs at his death left surviving him, as his heirs at law, his widow, Caroline Griggs, two children and two sets of grandchildren, who were the children of a deceased son and daughter. A. M. Griggs left surviving him, as his heirs at law, a widow and six children, and two grandchildren who were the children of a deceased son.

All of the above named children and grandchildren of Emily Griggs, deceased, were named as parties complainant or as parties defendant in the amended pleadings.

The record shows that the two 40-acre tracts of land mentioned above constituted the homestead of Gilford Griggs and his wife at the time of Gilford's death in 1910; and after Gilford's death Emily continued to reside on the 80-acre tract with her daughter, Emily, the younger, and for a period of several years Emily and her daughter continued to cultivate the open land on the two 40-acre tracts. Boston Griggs, who owned land in the same community, rendered financial assistance to his mother and sister from time to time, after the death of his father, and according to the testimony of some of the complainants' witnesses Boston helped them pay the taxes on the land, which was assessed on the county assessment rolls in the name of Emily Griggs. But during the late 'twenties the dwelling house on the 80-acre tract fell into a state of complete dilapidation, and Emily left the old home to live with her children. Emily the younger also moved away. The taxes assessed against the property for the year 1930 were not paid; and on April 6, 1931, the 80-acre tract was sold to the State for delinquent taxes. Neither Emily nor any of the children redeemed the land from the tax sale during the two year period of time allowed by the statute, and title to the land matured in the State on April 6, 1933, approximately six months prior to the date of Emily's death.

On September 17, 1940, A. M. Griggs purchased the land from the State and obtained a forfeited tax land patent thereto, and in 1942 he filed a petition in the chancery court to have his title confirmed. A decree was entered on May 26, 1942, confirming his tax title against the State. On October 9, 1940, A. M. Griggs and his wife executed an oil, gas and mineral lease on the land to H. Guinn Lewis, which was later assigned to the Humble Oil and Refining Company. The oral testimony of-

fered on behalf of the complainants tended to prove that Boston Griggs and the other complainants had no knowledge of A. M. Griggs' purchase of the forfeited tax land patent until a short time before the filing of the original bill of complaint in 1945.

The complainants alleged in their bill that at the time A. M. Griggs purchased the land from the State he was a tenant in common with the other heirs of Gilford and Emily Griggs of the 80-acre tract, and that his purchase of the land inured to the benefit of the other cotenants. The defendants in their answer denied that A. M. Griggs, at the time he purchased the land from the State, was a tenant in common with the other heirs of Gilford and Emily Griggs, or that the title which he acquired under the forfeited tax land patent inured to the benefit of the other heirs. The defendants in their answer averred that Emily Griggs owned no interest in the land at the time of her death, and that her heirs inherited no interest in the land at her death. The defendants averred that the only portion of the land in which the complainants might claim an interest was the undivided one-half interest in the Northwest Quarter of the Northwest Quarter of said Section 20, which Emily and the children inherited from Gilford in 1910, but that the complainants were estopped from asserting any claim to that undivided one-half interest because of their abandonment of all claim of ownership after the death of Emily Griggs in 1933, and because of their failure to redeem or aid A. M. Griggs in the repurchase of the land after the tax sale.

The chancellor, after hearing the testimony of the witnesses, took the case under advisement and a few days later rendered his opinion, dictating into the record his findings of fact and his conclusions of law. The chancellor held that A. M. Griggs was a tenant in common of the 80-acre tract with the other heirs of Gilford and Emily Griggs, at the time he purchased the land from the State in 1940, and that his purchase of the tax title in-

ured to the benefit of the other cotenants; and the chancellor found that the complainants were not estopped to assert their claim to an interest in the two 40-acre tracts.

The appellants' attorney in his brief does not challenge the correctness of the chancellor's holding that A. M. Griggs and the appellees were cotenants in their ownership of the Northwest Quarter of the Northwest Quarter of Section 20, and that the purchase of the tax title to that 40-acre tract by A. M. Griggs on September 17, 1940, inured to the benefit of all of the cotenants; and it is not necessary that we consider that feature of the case.

The only point argued by the appellant's attorney on this appeal is that the chancellor erred in holding that the appellants and the appellees were cotenants in the ownership of the remaining 40-acre tract described as the Southwest Quarter of the Northwest Quarter of Section 20, and that the purchase of the tax title to that 40-acre tract by A. M. Griggs in 1940 inured to the benefit of all of the heirs of Emily Griggs, deceased.

We think that the chancellor was in error in holding that A. M. Griggs was a cotenant with the other children and grandchildren of Emily Griggs, deceased, in the ownership of the last mentioned 40-acre tract, and that his purchase of that 40-acre tract inured to the benefit of the other children and grandchildren of Emily Griggs, deceased.

The authorities are uniform in affirming ▇▇ ▇ the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee, for ▇▇▇ it is generally agreed that when the

common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common cannot by the purchase of such title assert it against his cotenants. 14 Am. Jur., p. 123, Cotenancy, par. 54; Jonas et al. v. Flanniken, 69 Miss. 577, 11 So. 319; Cohea v. Hemingway, 71 Miss. 22, 14 So. 734; Clausell v. Riley, 188 Miss. 647, 196 So. 245; Howard et al. v. Wactor et al. (Miss.), 41 So. 2d 259; Smith et al. v. Smith et al., 211 Miss. 481, 52 So. 2d 1.

 The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his contenant is founded upon the confidential relation which is presumed to exist between them. Shelby v. Rhodes, et al., 105 Miss. 255, 62 So. 232; Beaman, et al. v. Beaman, et al., 90 Miss. 762, 44 So. 987. And the rule is especially applicable in cases where one tenant in common, who is in possession of the property and under a duty to pay the taxes on the property, permits the property to be sold for taxes and thereafter purchases in his own name the outstanding tax title and attempts to hold the property against his cotenants. Rule v. Broach et al., 58 Miss. 552; Jonas et al. v. Flanniken, supra; Cohea v. Hemingway, supra; Clausell v. Riley, supra; and Howard v. Wactor, supra.

But the rule stated above is predicated upon the existence of a tenancy in common; and the rule has no application where the relation of tenants in common does not exist. A. M. Griggs, in the case that we have here, was never a cotenant with the other heirs of Emily Griggs in the ownership of the 40-acre tract of land described as the Southwest Quarter of the Northwest Quarter of said Section 20. Neither A. M. Griggs nor the complainants owned any interest in that 40-acre tract at the time of the tax sale on April 6, 1931, or at any time during the period allowed by the statute for the redemption of the land from the tax sale. Emily Griggs was the owner of the land at the time of the tax sale; the right of redemp-

tion was vested in her; and the two-year period for redemption expired during her lifetime. When Emily died on September 20, 1933, she owned no interest in the 40-acre tract, and A. M. Griggs and the other children and grandchildren acquired no interest in the land as her heirs. The title to the land had been vested in the State, and that title was not held by the State subject to any equities in favor of the heirs of the former owner. It is conceded by the appellees that the tax sale was a valid tax sale; and when A. M. Griggs purchased the land from the State under the forfeited tax land patent seven years after the period for redemption had expired, the title conveyed to him did not inure to the benefit of the other heirs of Emily Griggs, deceased.

A. M. Griggs owned no interest in the above mentioned 40-acre tract prior to the date of his purchase of the land from the State in 1940, and was under no legal duty to pay the taxes on the land during Emily Griggs' lifetime or to redeem the land from the tax sale; and the record in this case does not support the appellee's contention that there was a relation of confidence and trust between A. M. Griggs and the other children and grandchildren of Emily Griggs that would render it inequitable for A. M. Griggs to purchase the land that his mother had formerly owned and had lost title to during her lifetime. Mere kinship, or descent from the common ancestor who had been completely divested of title to the property during her lifetime, did not create such a confidential or fiduciary relationship as would preclude A. M. Griggs from purchasing the tax title. The record shows that the entire 80-acre tract that had been sold to the State for taxes was unoccupied at the time of Emily Griggs' death and at the time A. M. Griggs obtained his forfeited tax land patent in 1940. Ties of kinship and the memories of by-gone years did not impose upon A. M. Griggs the duty of protecting a common interest

in the land for the benefit of the other heirs when no such common interest existed.

If Emily Griggs had died prior to the expiration of the period of redemption, A. M. Griggs and the other heirs would have succeeded to their mother's right to redeem the land from the tax sale at any time prior to the expiration of the two-year period; and under those conditions a redemption of the land from the tax sale by any one of her heirs during the two-year period would have inured to the benefit of the other cotenants. But no right of redemption remained at the time of the death of Emily Griggs; and no cotenancy relationship was created as to the last mentioned 40-acre tract by the death of Emily Griggs.

The cases cited by the appellees' attorneys in their brief in support of their contention that there was a relationship of trust and confidence between A. M. Griggs and the other heirs of Emily Griggs, deceased, are all cases in which a cotenancy relationship existed. And the rule applied in those cases is not applicable to the facts disclosed by the record in this case. In the case of Beaman v. Beaman, 90 Miss. 762, 44 So. 987, Charles Beaman, whose wife purchased the land owned by Charles' father at the time of his death, was not only a cotenant with the other heirs at the time of the sale, but he and his wife were in actual possession of the land when his father died, and when the trustee sold the land and Charles' wife became the purchaser. In the case of Shelby v. Rhodes et al., 105 Miss. 255, 62 So. 232, the court held that no confidential relationship existed in fact between the parties under the circumstances disclosed by the record for the reason that, though in law the parties were tenants in common, each was asserting hostile claims against the other with reference to the common property. In the case of Clausell v. Riley, 188 Miss. 647, 196 So. 245, the record showed that Fannie Taylor was a cotenant in possession of the land at the time of the tax

sale; and the Court held that it was her duty in the first instance to pay the taxes, and failing in that, it became her duty to redeem the property for the benefit of all the tenants in common, within the time allowed by the statute, and that when she purchased the lands from the State in her own name, she became in legal effect a redemptioner of the lands from the State, and this redemption inured to the benefit of all of the cotenants.

The appellees say, however, that the opinion rendered by the Court in the case of Smith et al. v. Smith et al., 211 Miss. 481, 52 So. 2d 1, is controlling in the case we have here. But in the Smith case the record showed that the land involved in that litigation was owned at the time of the tax sale by the heirs of Isham Smith, deceased, and that Bailey Smith, the father of Granberry Smith, was one of the cotenants. Bailey Smith died on December 22, 1933; and the Court in its opinion said that Granberry Smith, who had purchased the tax title in 1942, was "beyond question a cotenant after the death of his father."

The decision of the Court in the Smith case is controlling in this case on the question as to the complainants' rights of ownership in the 40-acre tract of land described as the Northwest Quarter of the Northwest Quarter of said Section 20; and the appellants' attorney has not challenged the correctness of the chancellor's decision as to that 40-acre tract. But the decision of the Court in the Smith case is not controlling here on the question as to the validity of the complainants' claims with reference to the remaining 40-acre tract, which was never owned by the parties as tenants in common.

We think that it is clear that A. M. Griggs was not a cotenant with the other heirs of Emily Griggs, deceased, as to the 40-acre tract of land described as the Southwest Quarter of the Northwest Quarter of said Section 20, at the time that he purchased the land from the State in 1940, or at any time prior thereto, and that the chancel-

lor was in error in holding that A. M. Griggs' purchase of that 40-acre tract inured to the benefit of the other heirs.

For the reasons stated above that part of the decree of the lower court declaring the complainants and the defendants to be the owners as tenants in common of the 40-acre tract of land described as the Southwest Quarter of the Northwest Quarter of Section 20, Township 8 North, Range 5 East, and ordering a sale of same for a division of proceeds among the several cotenants, is reversed, and the bill of complaint as to that 40-acre tract is dismissed. That part of the decree declaring the complainants and the defendants to be tenants in common of the 40-acre tract described as the Northwest Quarter of the Northwest Quarter of said Section 20, with interests in proportions as set forth in the decree, and ordering a sale of same for a division of proceeds among the several cotenants, is affirmed; and the cause is remanded to the lower court for such further proceedings as may be necessary.

Affirmed in part and reversed in part and remanded.

*McGehee, C. J.*, and *Roberds, Lee, Arrington* and *Ethridge, JJ.*, concur.