La Blanc, et al. *v.* Busby, et al.

No. 39484          March 16, 1955          78 So. 2d 456

416

*Gilbert & Cameron, J. E. Palmer,* Meridian; *J. S. Butler,* Quitman, for appellants.

*Robert E. Covington, Jr.,* Quitman, for appellees.

Kyle, J.

This case is before us on appeal by the complainants from a decree of the Chancery Court of Clarke County sustaining a general demurrer filed by the defendant to the complainants' original bill asking for a partition sale of a house and lot in the Town of Quitman, owned by the complainants and the defendant as tenants in common.

In their bill of complaint the complainants alleged that Hardy Palmer, their father, died intestate on January 23, 1934, and that he left surviving him as his only heirs at law his widow, Mrs. Mollie Palmer, and the complainants, who were the children of the said Hardy Palmer by a prior marriage; that the said Hardy Palmer at the time of his death was the owner of the above mentioned house and lot, which was used and occupied by him as a homestead; and that the said Mrs. Mollie Palmer continued to occupy the same as a homestead after the death of the said Hardy Palmer until her own death. The complainants further alleged that the said property was sold to the state on April 4, 1932, for delinquent taxes due and unpaid for the year 1931; and that said property had not been redeemed from the said tax sale at the time of the death of the said Hardy Palmer; that the said Mrs. Mollie Palmer failed and neglected to pay the taxes levied and assessed against the property, or to redeem the property from the tax sale prior to the expiration of the period of time allowed by law for the redemption of said property from the said tax sale, and failed and neglected to inform the com-

plainants, who were nonresidents of the state, that she was not paying the taxes on said property; and that by reason of her failure to pay said taxes, or to notify the complainants that the property had been sold to the state for delinquent taxes on April 4, 1932, the title to the property matured in the state and the land was certified to the state on April 20, 1935, as state-owned tax land; and that on July 23, 1938, the said Mrs. Mollie Palmer purchased said land from the state and had issued to her a forfeited tax land patent thereto.

The complainants further alleged in their bill that it was the duty of the said Mrs. Mollie Palmer to pay the taxes on said land and to redeem the same from said tax sale, and that, when she obtained the above mentioned forfeited tax land patent on July 23, 1938, she did so for the benefit of all the heirs of the said Hardy Palmer, deceased.

The complainants further alleged that the said Mrs. Mollie Palmer died during the year 1949 and left surviving her as her sole and only heir a daughter, Mrs. Alma Busby, who was named as defendant in the bill of complaint; that the said defendant, after the death of her mother, took possession of the property and since that time had rented the same and collected the rents therefrom and had failed and refused to account to the complainants for the rents thus received.

The complainants prayed in their bill that the court decree a partition of the property by a sale thereof for a division of proceeds among the several cotenants, and that the defendant be required to account for the rents and profits received by her since the death of her mother.

The defendant answered the bill of complaint, and in her answer denied that any tenancy in common or fiduciary relationship existed between Mrs. Mollie Palmer and the complainants at the time of the purchase of said forfeited tax land patent, or that Mrs. Mollie Palmer had purchased said tax title for the benefit of all of the heirs

of Hardy Palmer, deceased. The defendant also alleged in her answer that the claim and occupancy of the house and lot by the said Mrs. Mollie Palmer after the death of the said Hardy Palmer was adverse and hostile to the complainants, and uninterrupted for a period of more than ten years, and that the complainants were barred by the statute of limitations from asserting any claim to an interest in said property.

The defendant also filed a general demurrer to the bill alleging that there was no equity on the face of the bill.

The chancellor sustained the demurrer on the ground that no cotenancy relationship existed between the complainants and Mrs. Mollie Palmer at the time of the tax sale or at the time of Mrs. Mollie Palmer's purchase of the tax title; and the chancellor entered a decree dismissing the bill of complaint.

The only question presented for our decision on this appeal is whether or not the chancellor erred in sustaining the general demurrer to the bill of complaint.

We think that the chancellor did err in sustaining the demurrer to the bill of complaint.

It is true that no cotenancy relationship existed between Mrs. Mollie Palmer and the complainants at the time of the tax sale. But such cotenancy relationship did exist after the death of Hardy Palmer on January 24, 1934, and the tax title did not mature in the state until approximately fifteen months after Hardy Palmer's death. During that time Mrs. Mollie Palmer was in possession of the property as surviving widow of the deceased, with the right to continue to use and occupy the property during her lifetime, provided she remained a widow. Section 1412, Code of 1930, (Section 478, Code of 1942). Her interest in the property had many of the attributes of a life estate. Bohn v. Bohn, 193 Miss. 122, 5 So. 2d 429. And her right to the use and occupancy of the property was fully recognized by the other heirs.

■■ ■ The title which the state had acquired at the tax sale was only an inchoate title, which did not carry with it the right of possession of the property as against the owner, until the lapse of the 3- year period of redemption provided for in Section 14 of Chapter 189, Laws of 1934. McLaran v. Moore, 60 Miss. 376; Pool v. Ellis, 64 Miss. 555. ■■ ■ The property was not subject to partition or sale for partition during Mrs. Palmer's widowhood, as long as it was occupied and used by her, unless she consented. Section 1412, Code of 1930 (Section 478, Code of 1942).

■■ ■ Under these circumstances, Mrs. Palmer could not deal with the property to her own advantage and to the disadvantage of her cotenants, by permitting the tax title to mature in the state and thereafter purchasing the same for her own exclusive benefit.

In the case of Griggs v. Griggs, 218 Miss. 433, 67 So. 2d 450, the Court said:

"The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. * * *

"The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them. Shelby v. Rhodes, 105 Miss. 255, 62 So. 232; Beaman v. Beaman, 90 Miss. 762, 44 So. 987. And the rule is especially applicable in cases where one tenant in common, who is in possession of the property and under a duty to pay the taxes on the property, permits the property to be sold for taxes and thereafter purchases in his own name the outstanding tax title and attempts to hold the property against his cotenants."

In the case of Medford et al. v. Mathis, 176 Miss. 188, 168 So. 607, the Court had under consideration the question as to the duty of a widow who occupied and used exempt property to pay the ordinary taxes levied and assessed against the property, and in that case the Court said:

"We are of the opinion that the estates or right or interest vested by the quoted statute in the widow is more nearly analogous to a life estate than to any other to which it may be likened. She has the right to occupy and use the homestead during her life, provided she remain a widow, and she has, of course, the right to remain a widow. We hold, therefore, that the obligation of a widow in such case in respect to the payment of ad valorem taxes upon the property is the same as that of a life tenant;   *   *   *."

It is also generally held that a purchase by a life tenant of a tax title amounts merely to a redemption from the tax sale, or payment of the delinquent taxes, and restores not only his own rights but those of the holders of successive interests. 33 Am. Jur. 972, Life Estates, Remainders etc., par. 443; Anno. 17 A. L. R. 1400, and cases cited.

In the case of Stewart v. Matheny, 66 Miss. 21, 5 So. 387, this Court said: "A tenant for life cannot acquire a tax title to the defeat of the remainderman." And in the case of Whitfield v. Miles, 101 Miss. 734, 58 So. 8, this Court held that a husband cannot assert a tax title against his remainderman or tenant in common, and that the same disability attaches to his wife, and that her purchase of a tax title in such case operates as a redemption of the land for the interest of the life tenant and remainderman.

In the case of Spearman et al. v. Hussey et al., 210 Miss. 851, 50 So. 2d 610, the Court held that it is the duty of the occupant life tenant to pay the taxes on the property, and where the purchaser at a foreclosure sale of a life tenancy, whether the sale was valid or not, went

into possession of the property, any purchase by him of tax title while in such possession inured to the benefit of the remaindermen as well as himself.

The rule laid down by our own Court in the cases cited above finds ample support in the decisions of other courts.

In the case of Whitney v. Salter, 36 Minn. 103, 1 Am. St. Rep. 656, the Court said:

"The established doctrine is, that a tenant for life in possession, in the purchase of an encumbrance upon or an adverse title to the estate, will be regarded as having made the purchase for the joint benefit of himself and the reversioner or remainderman. The law will not permit him to hold it for his own exclusive benefit, if the reversioner or remainderman will contribute his share of the sum paid. If the life tenant in such case pays more than his proportionate share, he simply becomes a creditor of the estate for that amount."

In the case of Varney v. Stevens, 22 Me. 331, the Court held that if a tenant for life, after a sale of the property for taxes has occurred, obtains a release to himself of the right thus acquired, he takes under such release according to his title, and the remaindermen according to theirs.

In the case of Jordan et al. v. Sheridan, 149 Ky. 783, 149 S. W. 1028, the Court held that a widow, who on the death of her husband remains in possession of his real estate may be treated as a tenant at will until dower or homestead is assigned to her, and after that as a tenant for life; and that a widow in possession as tenant at will or for life of land in which she was entitled to dower or homestead for life, purchasing the property at a tax sale for taxes levied before her tenancy began, did not get an absolute title against the remaindermen, but took the title for the joint benefit of herself and the remaindermen, with the right to subject the remaindermen's interest in the property to the payment of their equitable portion of the taxes paid by her.

In the case of Phelan et al. v. Boylan et al. (1870), 25 Wis. 679, the Court held that a life tenant could not acquire a tax title adverse to the remaindermen, even though the tax sale was had for taxes that had accrued before the life estate existed. The Court in its opinion in that case said:

"The taxes here were a charge upon the land, a lien in fact upon the life estate of the tenant as well as the fee of the reversioners, and where that is the case a purchase by the tenant, or title acquired by him in pursuance of such charge, inures to the benefit of the reversioners as well as himself."

It is not necessary for us to determine here whether Mrs. Palmer was under a legal duty to the other heirs to redeem the property from the tax sale prior to the expiration of the period of redemption, or whether the other heirs would have had a cause of action against her for reimbursement for the amount expended by them in redeeming the property, if they had redeemed the property at their own expense. The question that we have to decide here is whether Mrs. Palmer, who was a cotenant in possession of the property and whose right as surviving widow had the attributes and incidents of a life estate, could permit the tax title to mature in the state and after the period for redemption had expired purchase the tax title from the state and hold it for her own exclusive benefit. And that question must be answered in the negative.

The purchase of the tax title by Mrs. Palmer on July 23, 1938, operated as a mere payment of the taxes, or a redemption of the property from the tax sale; and, although she purchased the tax title in her own name, she must be regarded as having made the purchase for the joint benefit of herself and her cotenants.

The appellee's attorney has cited in support of the chancellor's decree the case of Griggs et al. v. Griggs et al., 218 Miss. 433, 67 So. 2d 450, which has been referred to above. But the facts in the Griggs case were

wholly unlike the facts in this case. When Emily Griggs died, the title to the 40-acre tract of land involved in that case had matured in the state; and A. M. Griggs was never a cotenant with the other heirs of Emily Griggs in the ownership of that 40-acre tract.

We think the chancellor erred in sustaining the demurrer to the appellants' bill for a partition sale of the house and lot.

The decree of the lower court is therefore reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.