CAMPBELL *et al. v.* HEROD *et al.*

(In Banc. May 11, 1942.)

[7 So. (2d) 880. No. 34970.]

John E. Aldridge, of Winona, and C. A. Bratton, of Oxford, for appellants.

J. W. Conger, of Winona, for appellees.

**Roberds, J.**, delivered the opinion of the court.

T. J. Herod and the executors in the wills of Alice Penny and B. F. Penny, appellees here, as complainants in a suit in equity against Neal Campbell, John E. Aldridge and J. M. Barry, trustee, appellants here, sought (1) to establish in Herod title to a one-half undivided interest in a house and lot located in Winona, Mississippi; and (2) to cancel as a cloud thereon the claim of Campbell as owner and Aldridge as mortgagee thereto; (3) for sale of the property and division of the proceeds; and (4) for accounting of rents and profits. But there was an agreement of counsel "That the sole question for the court is whether B. F. Penny could, or did, procure a fee simple title to all of said lot from Whitehead, as against the remainderman, Eubon Smith, and whether T. J. Herod acquired one-half interest therein . . ." The chancellor decreed that Herod did acquire such interest. This appeal is from that decree. Herod's claim comes through

the will of Alice Penny and rests upon her title. Campbell's claim comes through the will of B. F. Penny and rests upon his title. The rights of the parties arise out of this situation:

B. F. Penny and Alice Penny, man and wife, as grantees in a deed in 1920, became the owners in equal parts as tenants in common of the property. Thereafter, they resided thereon as their homestead until the death of Alice in October, 1932, and B. F. Penny continued to so reside thereon until his death on Easter Sunday in 1934. In April, 1931, the property sold to Blackston and Whitehead for non-payment of the 1930 state and county taxes. It was not redeemed from that tax sale and on April 21, 1933, the chancery clerk executed a deed to the purchasers. On May 17, 1933, Blackston conveyed to Whitehead. On June 24, 1933, Whitehead conveyed the property to B. F. Penny.

Alice Penny left a will, dated in 1929, one item of which reads: "I hereby devise unto my husband B. F. Penny my one-half undivided interest in the house and lot in the City of Winona where we now reside, purchased by us from Felix Hawkins, and others, Sept. 10, 1920, the deed recorded in Book G, page 105, on the Land records of said County, this said one-half undivided interest to be used and held by him until his death along with the undivided one-half interest that he owns in said property, and at his death my said one-half interest is hereby devised to my nephew, Euban Smith, in fee simple. This devise to my husband is to be in lieu of all claims whatsoever against my estate of any nature."

In that will she also said her husband owned other property "well worth more than all the property I have disposed of by this will, or own at this time, and I have devised to him for life my interest in our house and lot, which with his own, will make sure of a home for him as long as he lives." Apparently her husband was also her only heir at law.

The will of B. F. Penny contained this provision: "Also to Miss Neal Campbell, aforesaid, I also give all the rest of my property in fee simple, especially all of my interest in the property in Winona, Mississippi, owned by me and my wife, Alice Penny at the time of the death of Alice Penny, and which I now own."

On September 19, 1936, Neal Campbell executed a deed of trust on the entire property to Barry, trustee, for benefit of Aldridge, to secure the payment of fifty dollars.

On May 3, 1938, Smith conveyed his interest in the property to Herod.

The administrations on the Penny estates are not concluded but no point is made as to that.

The chancellor found that Penny, after the death of his wife in 1932, held title to her interest in the property under her will, and that the effect of the deed to him by Whitehead was a redemption by him of the property from the tax sale in 1931.

No reason appears from this record which would justify us in saying he was in error in either respect. He also concluded that such redemption inured to the benefit of Penny, the life tenant, and Smith, the remainderman, under that will and that Smith and Campbell became equal owners of the property upon the death of B. F. Penny. We are to pass upon the correctness of that conclusion.

When the property sold for taxes in 1931, Alice Penny and B. F. Penny were tenants in common thereof, and if Alice Penny had been living when B. F. Penny redeemed the property from Whitehead, that redemption would have inured to the benefit of the common owners, the cost of the redemption being a common charge against the property. Harrison v. Harrison, 56 Miss. 174; Hardy v. Gregg (Miss.), 2 So. 358; Jonas v. Flanniken, 69 Miss. 577, 11 So. 319; Cohea v. Hemingway, 71 Miss. 22, 14 So. 734, 42 Am. St. Rep. 449; Clausell v. Riley, 188 Miss. 647, 196 So. 245.

But on the date of the redemption Penny was a life tenant in possession and Smith the remainderman as to the one-half interest of Alice Penny. It was the duty of B. F. Penny, as to the remainderman, to pay the taxes and to redeem the property from tax sale, and he could not cut off the remainderman and acquire his title by failure to perform his duty. Whitfield v. Miles, 101 Miss. 734, 58 So. 8; Federal Land Bank of New Orleans v. Newsom et al., 175 Miss. 134, 166 So. 346; 33 Am. Jur., p. 972, sec. 443; Swan v. Rainey, 59 Ark. 364, 27 S. W. 240; Inman v. Quirey, 128 Ark. 605, 194 S. W. 858; Heilwig v. Nybeck, 179 Mich. 292, 146 N. W. 141, Ann. Cas. 1915D, 356; Chaplin v. United States, 29 Ct. Cl. 231; First Congregational Church v. Terry, 130 Iowa, 513, 107 N. W. 305, 114 Am. St. Rep. 443; Prettyman v. Walston, 34 Ill. 175; Menger v. Carruthers, 57 Kan. 425, 46 P. 712; Phelan v. Boylan, 25 Wis. 679.

In the Whitfield case, supra, the court, after stating that the husband, the life tenant, could not buy an outstanding title and set it up against the remainderman, said neither could the wife of such life tenant do that. Robinson v. Lewis, 68 Miss. 69, 8 So. 258, 10 L. R. A. 101, 24 Am. St. Rep. 254. In the Heilwig case, supra, it was announced that the purchase by the life tenant from one who purchased at the tax sale amounts to a payment of the tax. The same is true even if the Government was the purchaser at the tax sale and subsequently conveyed to the life tenant. Chaplin v. United States, supra. In First Congregational Church v. Terry, supra [130 Iowa, 513, 107 N. W. 306, 114 Am. St. Rep. 443], the court, after stating the rule that the life tenant cannot purchase a tax title and hold it against a remainderman, continued: ''This being true, it is immaterial whether he takes the tax title direct, or by conveyance from some third person who has acquired it. In neither case can he assert such title against the owners of the remainder, and his purchase will be held to operate as a mere redemption from the tax sale or payment of the taxes for which he was

legally liable. Such would also be the necessary effect of a tax title taken by his procurement or for his use and benefit in the name of some other person.'' In the Prettyman and Menger cases, supra, it was held that a transferee of a life estate whose duty it is to pay the taxes cannot acquire a tax title. And in Phelan v. Boylan, supra, the court held that the life tenant could not so acquire such title against the remainderman even though the tax sale was had for taxes that had accrued before the life estate existed. See Federal Land Bank v. Newsom, supra.

The chancellor held that Penny accepted the devise in the will of his wife. If he accepted the life estate so devised, he could not repudiate the remainder provision. In Defreese v. Lake, 109 Mich. 415, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584, the land was devised to A for life with remainder to B for life and upon death of B remainder to his heirs in fee simple. B accepted the interest devised to him. He purchased the property at a tax sale during the life of A. The court held that he could not thereby cut off the remaindermen.

The question of apportionment of the redemption expense as between the present owners is not presented to us.

Affirmed.