WALL, et al. *v.* WALL, et al.

April 5, 1954

No. 39086          59 Adv. S. 63          71 So. 2d 308

*Gordon & Gordon,* Liberty, for appellants.

*T. F. Badon,* Liberty; *B. D. Statham,* Magnolia; *Louis Alford,* McComb, for appellees.

I. E. T. Harvey was not barred or otherwise ineligible to purchase the land in question by a forfeited land patent from the State of Mississippi. Fletcher v. Naumann, 213 Iowa 418, 239 N. W. 93; 43 Am. Jur., Public Officers, Sec. 266 p. 81; 51 Am. Jur., Taxation, Secs. 1057, 1059 pp. 922-3.

II. The overwhelming evidence is conclusive that E. T. Harvey conveyed the land and reserved and excepted one-half of the minerals, and these appellees are entitled to a reformation of the orginal deed. Frierson v. Sheppard, 201 Miss. 603, 29 So. 2d 726; 45 Am. Jur., Reformation of Instruments, Secs. 3, 14; Griffith's Miss. Chancery Practice (2d ed.), Secs. 589, 674.

ETHRIDGE, J.

This is largely a controversy between cotenants in land. The appellants, J. T. Wall, and others, are most of the descendants and heirs of J. J. Wall, who died intestate a resident of Amite County in 1893. At the time of his death, J. J. Wall was the owner of the S½ of SE¼ and SE¼ of SW¼ of Sec. 34, T. 1 N., R. 6 E., Amite County, Mississippi.

J. J. Wall, upon his death in 1893, left as his heirs ten children and his wife, Mrs. Sallie Lee Wall. His wife died in 1905, and each of his children thereupon became the owners of a 1/10th interest in the above described lands. After the widow's death in 1905, Elijah B. Wall, under an agreement with the other children, lived upon the place, paid the taxes and kept it up until his death in 1927.

Albert C. Wall, appellee-defendant, was one of the ten children and heirs of J. J. Wall and wife. Mrs. Val-

lie Wall, a sister-in-law of appellee Albert C. Wall, testified that in 1928 Albert came to her home in Slidell, Louisiana, and told her that the J. J. Wall lands had sold for taxes, that he had no place to live, and that, if she would redeem the land from the tax sale, he would thereafter pay the taxes and keep the place up for all of the heirs. She contacted some of the other heirs and they agreed for this arrangement to be carried out. So Mrs. Vallie Wall and three other members of the family met Albert in the Town of Osyka, Mississippi, where, they testified, he agreed to take care of the place and preserve it for all of the heirs, if she would redeem the property from the tax sale. She did so, and Albert C. Wall then moved upon the land under this 1928 agreement and remained upon it until the time of the trial in July, 1952. This family agreement as to Albert's occupation of the land for himself and the other tenants in common, heirs of J. J. Wall, was testified to by several other tenants in common. Albert denied it, and the chancellor made no express finding of fact concerning it. So we do not make any finding concerning it, since it would not affect the result we reach. However, whether or not Albert made this family agreement, he was nevertheless living on the land as a tenant in common. The 1929 taxes were not paid, so on April 7, 1930, the entire 120 acres were sold to the State for delinquent taxes. There was no redemption, and title matured in the State.

On December 4, 1942, the State executed to E. T. Harvey a forfeited tax land patent, conveying to him the S½ of SE¼ of Sec. 34. Alton Roberts, in the logging business, approached Harvey in the early part of 1943 about purchasing some timber on this tract. They went out to the land, and Harvey agreed to sell the timber to Roberts for $150. Albert C. Wall was present and asked Harvey about buying the land back from him. Harvey and Albert agreed to a sale of the land to Albert, reserving in Harvey the timber and one-half of the minerals.

Albert testified that this was his agreement with Harvey and Roberts confirmed it. On March 27, 1943, Harvey conveyed to appellee Albert C. Wall the S½ of the SE¼, but failed to include in it an exception of one-half of the minerals. On April 16, 1943, Albert C. Wall conveyed to Harvey a one-half mineral interest in the S½ of the SE¼. Wall testified that the failure to make the exception in the original deed to him of March 27, 1943, was a mutual mistake, and that he executed the one-half mineral deed to Harvey on April 16, 1943, to correct that mutual mistake. E. T. Harvey died intestate in 1943, leaving as his heirs his widow and three children. They are appellees here and were defendants below.

The remaining forty acres of the J. J. Wall tract, the SE¼ of SW¼ of Sec. 34, had also been sold to the State for delinquent taxes on April 7, 1930. On April 29, 1943, the State executed to appellee Albert C. Wall a forfeited tax land patent conveying to him the SE¼ of SW¼. Albert C. Wall, appellee, has been living on this land since 1928, and was there when the case was tried. Apparently the house is located on the middle forty.

The instant suit was brought by J. T. Wall and the heirs of J. J. Wall, other than Albert C. Wall, against Albert, the Harvey heirs, and others, seeking to confirm the complainants' titles as tenants in common to the 120-acre J. J. Wall estate, to cancel as clouds the defendants' claims, to obtain an accounting, and to partition the land, less the minerals, either in kind or by sale. The final decree of the Chancery Court of Amite County, dated January 16, 1953, held, with reference to the SE¼ of SW¼, that Albert C. Wall purchased this 40 acres from the State for the use and benefit of all of the heirs of J. J. Wall, his cotenants, but that, under the facts surrounding the purchase and use of that tract, Albert (now 84 years of age) is entitled to live on it without accounting to anyone for its use during the remainder of his life.

With reference to the S½ of SE¼ of Sec. 34, the remaining 80 acres of the J. J. Wall estate, the trial court

held that Harvey purchased from the State in 1942 a good and valid title; that by mutual mistake of both Harvey and Albert C. Wall, Harvey's deed to Albert of March 27, 1943, failed to except one-half of the minerals, and the trial court reformed that deed so as to provide for that exception in Harvey. The court held that Albert C. Wall owned a good title to the surface and one-half of the minerals in the S½ of SE¼, less a royalty interest conveyed by him to J. R. Brown, and that the heirs of Harvey owned the remaining one-half of the minerals.

The decree adjudicated that all of the parties agreed that Humble Oil and Refining Company owned the full oil, gas and mineral leasehold title to the entire 120 acres.

From that decree the complainants below, heirs of J. J. Wall, other than Albert C. Wall, have appealed. They argue that one cotenant cannot acquire an interest adverse to the rights of other cotenants, and that therefore the trial court erred when it held that Albert purchased from E. T. Harvey a full title to the S½ of SE¼, free of any claims of cotenants. Appellants say there was no ouster of them by Albert, and that there was nothing to support his claim that he had obtained a good title by adverse possession to the 80-acre tract. And they further contend that there was no legal basis for the court to hold that Albert owned the exclusive right to the use of the surface of the SE¼ of SW¼ for his life without accounting to the other cotenants. It is also claimed that the Harvey heirs were not entitled to a reformation of their father's deed to Albert. Albert C. Wall did not cross-appeal as to the title to the SE¼ of the SW¼.

■■ We agree with the appellants' contentions except as to the reformation question. The trial court correctly held that when Albert purchased from the State in 1943 the SE¼ of the SW¼, he purchased the same for the use and benefit of all of his cotenants. It erroneously held that the same result did not also apply as to the S½ of SE¼. As to that tract, the State patented it to Harvey on December 11, 1942, and on March 27, 1943, Harvey

conveyed it to Albert C. Wall. The fact that Albert did not purchase this 80-acre tract directly from the State, but that Harvey first purchased it, held it for almost four months, and then sold it to Albert, did not have the effect of eliminating Albert's obligations to his cotenants, the appellants. The rule is stated in 14 Am. Jur., Cotenancy, Sec. 54:

"The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant *or to a third person through whom he claims as grantee,* for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common cannot by the purchase of such title assert it against his cotenants." (Emphasis ours.)

This is the rule which for many years has been applied in Mississippi. The acquisition of a tax title by a cotenant amounts merely to a payment of the taxes or a redemption from the sale. It is immaterial whether the cotenant procured his tax title directly from the State or from a third person who has precedently purchased it from the State. Cohea v. Hemingway, 71 Miss. 22, 14 So. 734 (1893); Smith v. Smith, 211 Miss. 481, 501, 52 So. 2d 1 (1951); see also Griggs v. Griggs, 67 So. 2d 450, 453 (Miss. 1953). Hence when Albert C. Wall purchased from Harvey the surface and one-half of the minerals to the S½ of the SE¼, he purchased it for the use and benefit of himself and all of his cotenants, in the same manner that the trial court held that he obtained for himself and his cotenants title to the SE¼ of the SW¼.

The chancery court also erred in holding that Albert C. Wall was entitled to live on and use the surface of

the SE¼ of the SW¼ of Sec. 34 and the improvements on it during the remainder of his life without accounting to anyone for that use. The agreement which the appellants say that Albert made in 1928 was that he would maintain the property and pay the taxes on it, and in return could live on it without accounting to his cotenants, but he breached that agreement, if it existed, and it is now rescinded. On the other hand, Albert denies its existence. Under either hypothesis, he is a cotenant in the entire 120 acres with the other cotenants, appellants. Albert owns a 1/10th interest. As a cotenant he has the rights and duties of any other co-owner of real property. 14 Am. Jur., Cotenancy, Secs. 23-24.

Appellee asserts that he and his predecessor in title under the patent, Harvey, have adversely possessed the S½ of the SE¼ against all of his cotenants since December 4, 1942, the date of the patent from the State, and that therefore he has acquired title to that tract under Code Sec. 717. That statute provides that an owner of lands sold to the State for taxes may bring a suit to cancel the tax title on account of any defect in the sale within two years after its date, and not after. It has been held that there must be actual possession by the purchaser of the tax title. Grant v. Montgomery, 193 Miss. 175, 5 So. 2d 491 (1942). However, in Smith v. Smith. 211 Miss. 481, 504, 52 So. 2d 1 (1951), involving an issue between cotenants similar to the present one, it was held that Sec. 717 has no "application to a tax title claim by one cotenant against another." The cotenant must rely, if at all, upon the ten-year adverse possessory statute, Code Sec. 711. And since the patent was issued to Harvey in December, 1942, and this suit was filed in September, 1951, ten years have not elapsed since the State conveyed to Harvey.

The trial court was correct in reforming the deed of March 27, 1943, from E. T. Harvey to Albert C. Wall, so as to except and reserve in Harvey and his heirs, appellees, one-half of the minerals under the S½ of SE¼ of

Sec. 34. The court found that this omission in the deed was a mutual mistake, and this was confirmed by the uncontradicted testimony of Albert C. Wall, and of Alton Roberts, who was present when Harvey and Albert agreed to the transfer.

For the above reasons, the final decree is affirmed in part and to the following extent: (1) That Albert C. Wall purchased the SE¼ of SW¼ for the use and benefit of all of the heirs of J. J. Wall; (2) that the deed from E. T. Harvey to Albert C. Wall of March 27, 1943, is reformed, and title is confirmed in Harvey's heirs to an aggregate of one-half of the minerals under the S½ of the SE¼; (3) that the patents from the State are valid; (4) that by agreement of all parties Humble Oil and Refining Company has a valid oil, gas and mineral lease hold on the lands; (5) that the fractional interests of the heirs of J. J. Wall in the SE¼ of the SW¼ are as set forth in the final decree.

The final decree is in part reversed, and judgment rendered, in the following respects: (1) Insofar as the trial court's decree held that Albert was entitled to live on the SE¼ of SW¼ without accounting to anyone; (2) insofar as it held that Albert was the owner of the entire surface and one-half minerals in the S½ of the SE¼. Albert owns a 1/10th interest as a tenant in common in the SE¼ of SW¼. He owns a 1/10th interest in the surface and one-half of its minerals in the S½ of the SE¼, less what he has conveyed away. As to the latter tract, the heirs and tenants in common with Albert own their respective fractional interests. Since the appellants prayed in their bill of complaint for an accounting and a partition, this cause will be remanded for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and judgment rendered, and cause remanded.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.