BROWN, et al. *v.* BROTHERS, et al.

No. 40545 October 28, 1957 97 So. 2d 642

*Robert E. Covington, Jr.,* Quitman, for appellants.

*Riddell & Dabbs,* Quitman, for appellees.

KYLE, J.

This case is before us on appeal by Sam Brown and Robert E. Covington, Jr., complainants in the court below, from a decree of the Chancery Court of Clarke County vesting in each of the appellees, Hayward Brown, Laura Brown Carlisle, and Jerusha Brown Sandberry, defendants and cross complainants in the court below title to an undivided one-seventh interest in 160 acres of land in Clarke County described as the NW¼ of the NE¼ of Section 10, and the N½ of the NW¼, and the SW¼ of the NW¼ of Section 11, in Township 3 North, Range 15 East, which had been conveyed to Sam Brown by the State of Mississippi by forfeited tax land patent dated October 14, 1938.

The record shows that Archie Brown was the owner of the land at the time of his death in 1922; that Archie Brown died intestate and left as his only heirs at law his widow, Georgia Ratcliff Brown, and eight children, namely, Sam Brown, Alabama Brown Bland, Haywood Brown, John Wesley Brown, Laura Brown Carlisle, Malchi Brown, Estella Brown Brown, and Addie Brown Bonner. Georgia Ratcliff Brown died intestate in 1929, and left surviving her as her only heirs the above named children of Archie Brown, deceased. Malchi Brown died in 1942, and left surviving him as his only heirs the above named brothers and sisters. John Wesley Brown died sometime thereafter, leaving as his only heir the above named Jerusha Brown Sandberry. After the death of Archie Brown, his widow and the above named children continued to own the above described land as tenants in common until Georgia Ratcliff Brown's death in

1929. The taxes levied and assessed against the lands for 1928 were not paid, however, and the lands were advertised and sold on April 1, 1929, for delinquent taxes due and unpaid for that year and were struck off to E. Bonney. The lands were assessed at that time to Archie Brown, and although a notation on the records of the tax sales indicates that tax deeds were delivered to E. Bonney, the purchaser, on April 9, 1931, the deeds were never recorded and were not offered in evidence during the trial. The lands were again assessed to Archie Brown as the owner thereof for the year 1931. The taxes were not paid, and the lands were again advertised and sold on April 4, 1932, for the taxes due and unpaid for 1931, and were struck off to the state. The title matured in the state, and on October 14, 1938, Sam Brown filed an application for the purchase of the lands from the state, and a forfeited tax land patent was issued to him on that date conveying to him the state's tax title. A copy of the application to purchase the lands from the state appears in the record as an exhibit to the appellee's cross bill. In his application to purchase the lands Sam Brown stated that Archie Brown, deceased, was the owner of the lands at the time of the sale of the lands to the state on April 4, 1932, and that the lands were assessed to Archie Brown at that time; that the lands had belonged to the applicant's father and mother for the last sixty years, and that they were both dead; that the applicant had paid the taxes on the lands since 1918.

On December 24, 1954, Sam Brown conveyed the lands to the appellant, Robert E. Covington, Jr., by warranty deed. Thereafter Addie Brown Bonner, Alabama Brown Bland and Estella Brown Brown quitclaimed their interest in the lands to Sam Brown by quitclaim deed dated February 1, 1955. No such deed was ever executed, however, by Haywood Brown, Laura Brown Carlisle or Jerusha Brown Sandberry.

██ ██ The parties named as defendants in the original bill of complaint and the cross bill filed by the appellees were numerous, and the pleadings voluminous. But all of the issues raised by the pleadings were settled by agreement of the parties, except the one clearly defined issue between the appellants, Sam Brown and Robert E. Covington, Jr., and the appellees, Haywood Brown, Laura Brown Carlisle and Jerusha Brown Sandberry, and that issue was, whether or not the purchase of the lands by Sam Brown from the state under the forfeited tax land patent dated October 14, 1938, inured to the benefit of all of the heirs of Archie Brown, deceased, as tenants in common.

The lower court held that Sam Brown's purchase of the state's tax title on October 14, 1938, under the facts disclosed by the record, inured to the benefit of all of the heirs of Archie Brown, deceased, as tenants in common, basing its decision upon the rule enunciated by this Court in Griggs v. Griggs, et al. (1953), 218 Miss. 433, 67 So. 2d 450, and Wall et al. v. Wall et al. (1954), 220 Miss. 642, 71 So. 2d 308.

The only point argued by the appellants' attorneys as ground for reversal of the decree of the lower court is that the court erred in holding that the purchase of the land from the state by Sam Brown inured to the benefit of all of the former cotenants.

It is argued on behalf of the appellants that the cotenancy relation that existed among the heirs of Archie Brown, deceased, prior to the date of the tax sales terminated when title to the lands in question matured in E. Bonney under the tax sale of April 1, 1929, and that, the rule stated in the Griggs case and applied by this Court in the Wall case has no application to the facts in this case.

But we think that the chancellor was correct in his holding that Sam Brown's purchase of the state's tax

title on October 14, 1938, inured to the benefit of all of the heirs of Archie Brown, deceased, as tenants in common.

As this Court said in its opinion in the Griggs case, supra, ''The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rule prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee, for it is generally agreed that when the common property has been sold for taxes to a stranger, even though the time for redemption has expired, a tenant in common cannot by the purchase of such title assert it against his cotenants. 14 Am. Jur., p. 123, Cotenancy, par. 54; Jonas et al. v. Flanniken, 69 Miss. 577, 11 So. 319; Cohea v. Hemingway, 71 Miss. 22, 14 So. 734; Clausell v. Riley, 188 Miss. 647, 196 So. 245; Howard et al. v. Wactor et al. (Miss.), 41 So. 2d 259; Smith et al. v. Smith et al., 211 Miss. 481, 52 So. 2d 1.'' See also Allen v. Poole (1877), 54 Miss. 323; Fox v. Coon (1886), 64 Miss. 465, 1 So. 629; Wise Bros. v. Hyatt (1891), 68 Miss. 714, 10 So. 37; Harrison v. Harrison (1878), 56 Miss. 174; Hardy v. Gregg (Miss. 1887), 2 So. 358; Falkner v. Thurmond (Miss. 1898), 23 So. 584; Campbell v. Herod (1942), 193 Miss. 17, 7 So. 2d 880; and Wall v. Wall (1954), supra.

 The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them. Griggs v. Griggs, supra, and cases cited. The rule is subject to some exceptions and does not go

beyond the reason which supports it. See Davis v. Cass, 72 Miss. 985, 18 So. 454; Shelby v. Rhodes, 105 Miss. 255, 62 So. 232. But we see no reason for an exception in this case.

██ The fact that the lands involved in this case had been sold in 1929 for taxes due and unpaid for 1928 and had been struck off to E. Bonney, who appears to have received tax deeds therefor on April 9, 1931, but failed to pay the taxes levied and assessed against the lands for the year 1931, in consequence whereof the lands were again advertised and sold for taxes due and unpaid for that year and were struck off to the state, did not in our opinion have the effect of terminating the relation of trust and confidence which is presumed to have existed among the several cotenants with respect to their interests in the common property, so as to enable one of them to purchase the tax title and hold the property against his cotenants. So far as this record shows the heirs of Archie Brown were never evicted from the premises under the tax title acquired by Bonney in 1931; and it is a significant fact that Bonney never filed his tax deeds for record, if he ever received such tax deeds, and never had the lands assessed to him as the owner thereof. Whatever claims Bonney may have had were extinguished when he permitted the tax title to mature in the state under the sale of April 4, 1932.

Some courts have held that, after a tax title to the lands of a cotenancy has matured in the hands of a stranger and the parties have been evicted from the premises, the cotenancy ceases, and if one of the cotenants then buys the lost lands, the purchase is for his own exclusive benefit. Coleman v. Coleman, 3 Dana 398, 28 Am. Dec. 86; Alexander v. Sully, 50 Iowa 192; Bush v. Bush (Tex. Civ. App.), 275 S. W. 1096. But this view finds little support in the later cases and is at variance with the rule laid down in the decisions of this Court from the earliest times.

██ █ When the appellant, Sam Brown, in the case that we have here, attempted to convey the lands hereinabove described to the appellant, Robert E. Covington, by warranty deed dated December 24, 1954, he owned only an undivided 1/7th interest in the lands, and title to that interest only passed to the grantee when the deed was executed. Howard v. Wactor (Miss.), 41 So. 2d 259.

██ █ But, when Sam Brown obtained quitclaim deeds from three of the remaining heirs about six weeks thereafter, the interests thus acquired by him automatically inured to the benefit of his prior vendee. Covington therefore became the owner of an undivided 4/7ths interest in the lands, and the appellees who had never conveyed their interests, continued to be the owners of the three remaining undivided 1/7th interests.

The chancellor found that the appellant Robert E. Covington was the owner of an undivided 4/7th interest in the lands, and the appellees were the owners of an undivided 1/7th interest each, subject to the separate mineral interests owned by other parties as set out in the decree, which are not involved in this appeal. There was no error in the chancellor's finding, and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.