276 So.2d 690 (1973)
Cornelius TURNER
v.
Dr. W.E. MILLER.
No. 47109.
Supreme Court of Mississippi.
April 23, 1973.
Butler, Snow, O'Mara, Stevens & Cannada, Richard L. Forman, E. Clifton Hodge, Jr., Jackson, for appellant.
Leon L. Shelton, Jackson, for appellee.
RODGERS, Presiding Justice.
This appeal is taken from a final decree of the Chancery Court for the First Judicial District of Hinds County, Mississippi, in which title to certain property on Lynch Street in the City of Jackson, Mississippi, was confirmed in Dr. W.E. Miller, the appellee.
In prosecuting this appeal, the appellant, Cornelius Turner, argues that the court was manifestly incorrect in failing to find that Dr. Miller was estopped to acquire a valid tax title to the subject property. Appellant further submits that the decree of the lower court was contrary to the weight of the evidence and was manifestly incorrect as a matter of law.
*691 In 1959, Dr. Miller and Cornelius Turner entered into an oral agreement whereby Dr. Miller was to provide the financing to purchase certain properties while Turner was to furnish the labor and materials necessary to develop these properties. Subsequently, on November 16, 1959, Turner and Miller purchased the Lynch Street property in question for the sum of five thousand two hundred dollars ($5,200.00). The deed to the property was initially taken in the name of Cornelius Turner, but, later, on December 5, 1959, pursuant to an earlier agreement, Turner conveyed an undivided one-half (1/2) interest in the property to Dr. Miller.
The testimony indicates that there was an informal agreement between Miller and Turner to the effect that Turner was to pay the ad valorem taxes on the subject property out of the rents received on the property. Initially all city and county tax statements were sent to Turner's address at 1010 Valley Street in Jackson, Mississippi. However, for undisclosed reasons, beginning in 1965 the city tax statements were sent to Dr. Miller's office at 1040 Dalton Street. Very shortly thereafter, the property was sold for non-payment of the 1965 city ad valorem taxes, but redeemed by Dr. Miller in 1968. On April 7, 1969, the city tax collector of Jackson again sold the property for non-payment of the 1968 ad valorem and special assessment taxes due on the property. At the time of the 1969 tax sale, it is alleged that Dr. Miller was still receiving the city tax notices, and Miller and Turner were still cotenants in the property. Insofar as knowledge of the city tax notices is concerned, the testimony is in hopeless conflict. Dr. Miller stated that if any tax notices were received in his offices bearing his name as well as Turner's, they were forwarded automatically by his secretary to Turner's address. On the other hand, Turner denies receiving any city tax statements on the subject property. Since he received no city tax statements on the Lynch Street property, appellant claims that he had no knowledge of the fact that the city taxes were not being paid when due.
On April 8, 1969, the day after the tax sale, Dr. Miller conveyed his one-half (1/2) interest in the property to Ola Mae Hudson by special warranty deed in consideration of six thousand dollars ($6,000.00). Soon thereafter on May 1, 1969, Mrs. Hudson conveyed the same one-half interest in the subject property by warranty deed to Cornelius Turner. Despite the fact that the deed required Turner to assume all "... ad valorem taxes which may be due or which will become due on the subject property," he was apparently unaware and did not investigate to discover that the property had been sold for taxes in 1969, subject to a right of redemption expiring after April 7, 1971.
On January 14, 1971, even though he was no longer a cotenant, Dr. Miller was served with a final notice of redemption by a deputy sheriff of Hinds County concerning the Lynch Street property previously conveyed to Ola Mae Hudson. Despite the fact that Dr. Miller must have known of the impending expiration of the redemption period, he did not see fit to mention his knowledge of this situation to his former cotenant, Cornelius Turner. On April 7, 1971, the title to the property in question [arising out of the previous tax sale], matured to Hinds County Investment Company, and on June 4, 1971, Hinds County Investment Company quitclaimed its interest in the property to Dr. W.E. Miller.
In appealing from a decree of the Chancery Court of Hinds County confirming title in Dr. Miller as to the Lynch Street property, the appellant has raised two basic issues which require analysis and resolution.
First, appellant argues that Dr. Miller was under an obligation to pay the taxes on the Lynch Street property on account of his cotenant fiduciary relationship with appellant. As a result of this so-called fiduciary relationship, appellant contends that Dr. Miller acquired the Lynch Street *692 property as a constructive trustee for the use and benefit of Cornelius Turner. It is therefore argued that Miller should be required to reconvey the land in question to Turner. Of course, it is recognized that
"The general rule precluding the right of a tenant in common to acquire title to the common property for his own benefit applies where one tenant in common purchases at a tax sale or acquires an outstanding tax title or claim." Whelchel v. Soloman, 254 Miss. 334, 339, 180 So.2d 642, 644 (1965).
See also Gavin v. Hosey, 230 So.2d 570 (Miss. 1970); Brown v. Brothers, 231 Miss. 729, 97 So.2d 642 (1957); LaBlanc v. Busby, 223 Miss. 415, 78 So.2d 456 (1955); Wall v. Wall, 220 Miss. 642, 71 So.2d 308 (1954); and Smith v. Smith, 211 Miss. 481, 52 So.2d 1 (1951).
In the instant case, however, the tenancy in common ceased to exist when Miller conveyed his one-half undivided interest in the property to Ola M. Hudson, since there is no showing of fraud or deceit on the part of Dr. Miller. The applicable authorities in the briefs of the parties suggest that any fiduciary duty which might have been imposed on Dr. Miller as a result of his cotenancy with Turner in the Lynch Street property dissolved upon Miller's conveyance to Ola Mae Hudson in 1969. For instance, one text writer sets forth the following general rule:
"* * * One who has parted with his interest and ceased to be connected with the title as a tenant in common may buy an outstanding tax title. So, in the absence of fraud, and where a cotenancy has been actually dissolved and the parties have been evicted from the premises, there is nothing which forbids a former tenant in common from acquiring the entire property by purchase from an outsider. On the termination of a cotenancy, a former cotenant may acquire sole title to the property at a tax sale, in the absence of fraud, collusion, or other inequitable conduct. * * *" 86 C.J.S. Tenancy in Common, § 64b(3), at 438 (1954).
In Jonas v. Flanniken, 69 Miss. 577, 11 So. 319 (1892) this Court adopted a rule of law which closely resembles the preceding encyclopedic viewpoint. In Jonas, this Court held that a tenant in common, of property sold for taxes, may purchase a tax title after the cotenancy has been terminated, and he has become a stranger to the title, since "Prior to that (conveyance) the land had not been held in severalty by any person under whom the defendant claims." (Parenthesis added) 69 Miss. at 586, 11 So. at 321.
In the absence of sufficient evidence to establish either a fiduciary relationship arising out of a partnership arrangement or presumptive fraud on the part of Dr. Miller, we hold that once Dr. Miller had become a stranger to the title of the Lynch Street property, he was under no duty to pay the taxes on the property nor to inform his former cotenant of the fact that the property had been sold for taxes subject to a right of redemption.
Dr. Miller ceased to be a cotenant in the Lynch Street property when he conveyed his one-half undivided interest in the property to Ola Mae Hudson. The fact that this conveyance was made by special warranty deed has special significance, and makes it necessary for us to explain the effect of such an instrument. In this regard, Section 844, Mississippi Code 1942 Annotated (1956) states:
"The words `warrant specially,' in a conveyance, shall constitute a covenant that the grantor, his heirs and personal representatives, will forever warrant and defend the title of the property unto the grantee and his heirs, representatives, and assigns, against the claims of all persons claiming by, through, or under the grantor." Sec. 844, Miss.Code 1942 Ann. (1956).
*693 Therefore, for all practical purposes, a special warranty deed is little more than a quitclaim deed, but which extends to bind the grantor, his heirs and personal representatives. Section 845, Mississippi Code 1942 Annotated (1956). See W. Ethridge, Jr., The After-Acquired Property Doctrine and Its Application in Mississippi, 17 Miss.L.J. 153, at 155 (1945).
At common law, a quitclaim deed is generally considered insufficient to estop a grantor from obtaining an after-acquired title or interest. 19 Am.Jur.Estoppel § 20, at 618 (1939). See Annot., 58 A.L.R. 345, at 360 (1929); 3 American Law of Property § 15.19, at 844 (J. Casner ed. 1952). Our Mississippi statute, however, recognizes the operation of the after-acquired title doctrine with respect to quitclaim deeds. Section 846, Mississippi Code 1942 Annotated (1956) states:
"A conveyance of quitclaim and release shall be sufficient to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed." Sec. 846, Miss.Code 1942 Ann. (1956)
A typical recital of the after-acquired title doctrine is as follows:
"Where a grantor who has no title, whose title is defective, or whose estate is less than that which he assumes to pass, conveys by warranty or covenants of like import and subsequently acquires the title or estate which he purports to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee, or to his benefit, by way of estoppel." 7 G. Thompson, Real Property § 3207, at 394-395 (1962).
See Annot., 144 A.L.R. 554 (1943); 3 American Law of Property §§ 15.17-15.24, at 839-853 (J. Casner ed. 1952); 31 C.J.S. Estoppel § 21, at 309 (1964); 1 R. Patton & C. Patton, Land Titles §§ 215-216, at 515 (2d ed. 1957); J. Sackman, The Law of Titles § 7.3, at 1011-1017 (1959). See also 23 Am.Jur.2d Deeds § 300, at 333-334 (1965); W. Burdick, Handbook of the Law of Real Property §§ 227-228, at 621-623 (1914); W. Burby, Handbook of the Law of Real Property, § 128, at 320-321 (3d ed. 1965); 3 G. Glenn, Mortgages, §§ 409-432, at 1637-1693 (1943); 2 L. Jones, A Treatise on the Law of Mortgages of Real Property § 840, at 145-149 (8th ed. 1928); 6 R. Powell, the Law of Real Property § 908 n. 6 at 268.24 (P. Rohan rev. ed. 1972); 8A G. Thompson, Real Property § 4343, at 16 (1963); 4 H. Tiffany, the Law of Real Property § 1231, at 642 (1939).
In Meyers v. American Oil Co., 192 Miss. 180, 5 So.2d 218 (1941), this Court held that the after-acquired title doctrine extended to conveyances involving quit-claim deeds. In that case, Justice Griffith offered the following observations:
"Nothing is better settled in this state than the rule that the grantor and all persons in privity with him shall be estopped from ever afterwards denying that, at the time his deed of conveyance was executed, he was seized of the property which his deed purported to convey, and that mortgages and deeds of trust are within this rule. By statute, sec. 2125, Code 1930, the rule is extended even to quit-claim deeds. The effect of this doctrine of estoppel by deed is the same as if in the deed itself, or in the mortgage, there had been inserted with valid force the express provision that it then and there conveyed not only all the title then possessed by the grantor in the property therein described, but all that he might thereafter acquire; wherefore to give that full and adequate efficacy to the rule which its nature and reasons require, there must be included as inherent in it the element that any after-acquired title, so far as concerns the grantor and his privies, relates back as of the date of the original deed  or, as sometimes phrased, the estoppel runs with the land." 192 Miss. at 186-187, 5 So.2d at 220.
*694 See Chevron Oil Company v. Clark, D.C., 291 F. Supp. 552, 558 (1968), aff'd in part, rev'd in part, 432 F.2d 280 (5 Cir., 1968); Garner v. Garner, 117 Miss. 694, 78 So. 623 (1918); Bramlett v. Roberts, 68 Miss. 325, 326, 10 So. 56 (1890).
It should be noted, and we are cognizant of the fact, that this Court declined to apply the after-acquired title doctrine with respect to quitclaim deeds in McLaurin v. Royalties, Inc., 231 Miss. 240, 95 So.2d 105 (1957). Compare Crooker v. Hollingsworth, 210 Miss. 636, 46 So.2d 541 (1950). However, the McLaurin case is outside of the holdings of this Court generally on this subject, and has been frequently criticized by text writers as well as members of the Bench and Bar since its appearance. 29 Miss.L.J. 353 (1958).
The after-acquired doctrine applies only when the assertion of the newly-acquired title denies that the conveyance passed the interest or estate which it purported to pass. The doctrine does not apply to the acquisition of a separate estate in the same land. For example: One heir may sell his interest in property and later acquire the interest of another heir, and this second interest would not inure to the benefit of the grantee in his previous deed. 23 Am.Jur.2d Deeds § 294, at 327 (1965); Annot., 144 A.L.R. 554 (1943).
In view of the authorities presented herein, we hold that Dr. Miller was estopped to set up an after-acquired title against the one-half interest in the Lynch Street property previously conveyed by special warranty deed to Ola Mae Hudson. By operation of the after-acquired title doctrine, when Dr. Miller acquired a quit-claim deed from the purchaser of the property at the tax sale, he did so for the use and benefit of his grantee Ola Mae Hudson. On the other hand, Dr. Miller could acquire the one-half interest in the Lynch Street property since that moiety was not acquired until after his interest as a cotenant in the Lynch Street property had expired.
The effect of our holding is that Dr. Miller and Cornelius Turner are now again cotenants in the property here involved, each owning a one-half (1/2) interest.
Affirmed in part; reversed in part and rendered.
PATTERSON, SMITH, SUGG and BROOM, JJ., concur.