McMILLIN, C.J., for the Court:
¶ 1. John Paul Covington (hereafter Paul) has appealed to this Court from a judgment entered in the Chancery Court of Winston County regarding the dissolution of a closely-held corporation owned jointly by Paul and his brother, David Covington (hereafter David). The corporation was named Forklift Machine Sales, Inc. (hereafter FMS). As a part of the dissolution, the chancellor required David *667 to reimburse the corporation for various expenditures authorized by him which the chancellor found were not legitimate corporate expenses. Paul, despite his relative success before the chancellor, has nevertheless appealed. His principal contention is that the chancellor was improperly generous to David in determining the amounts due back to FMS. Additionally, Paul urges that, rather than entering an order compelling David to reimburse the corporation, the chancellor should have entered judgment directly in Paul’s favor and against David. Paul also complains that the chancellor failed to enforce repayment of the misappropriated funds against David’s wife, Nancy, because she was an officer of the corporation actively participating in the disbursements. Paul also complains that the chancellor failed to grant any relief directly against a corporation established by David and Nancy, named DMN Corporation, whose sole purpose appeared to be to assume ownership of assets formerly owned by FMS and to pursue business opportunities formerly pursued by that corporation.
¶ 2. Our task in assessing the merits of this appeal is complicated by the fact that the appellees, David, Nancy, and DMN have not filed a brief in this appeal. This failure invokes two competing considerations. First, there is the proposition that an appellee’s failure to file a brief on appeal may be considered as confession of error. Snow Lake Shores Prop. Oumers Corp. v. Smith, 610 So.2d 357, 361 (Miss.1992). However, there is additional authority that says, in such a circumstance, the presumption of correctness that attaches to a ruling by a court of competent jurisdiction remains in play and that an appellate court may uphold the trial court’s order if a review of the record leaves the appellate court convinced of the manifest correctness of the trial court’s judgment. Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973). In this case, Paul, as the appellant, has raised nine separate issues which he claims to constitute reversible errors by the chancellor.
¶ 3. Based on our review of the record and the judgment in this case, we conclude with a reasonable measure of certainty that the chancellor did not err as to certain of these issues and that the chancellor should be affirmed despite the absence of a brief from the appellees. These include matters upon w’hich the chancellor enjoyed a broad measure of discretion in fashioning a suitable remedy and for which we do not find, even with the aid of the appellant’s brief, the requisite abuse of that discretion that would compel this Court to set aside the chancellor’s ruling. However, as to the remaining issues, the chancellor failed to set out the reasoning to support his ruling and, in the absence of any such explanation, we are forced to conclude that the appellant’s brief raises an arguable case for error. That being the case, we conclude that the absence of an appellee’s brief must be deemed as confessing error as to those issues. As a result, we find ourselves compelled to affirm in part but to reverse and render in part.
I.
Issue One: The Proper Judgment Creditor
¶ 4. As his first error, Paul urges that the chancellor, under authority of Aquar-Culture Tech., Ltd. v. Holly, 677 So.2d 171 (Miss.1996), should have rendered judgment directly in his favor for his pro-rata share of the sums determined to be owed by David to FMS instead of requiring David to reimburse the corporation. The Aquar-Culture case stands for the proposition that such a direct judgment may be appropriate in some circumstances; however, in this case, the chancellor’s ruling included a determination that certain of the funds to be recovered from David were to be used to satisfy corporate obligations owed to third parties. Certainly, as to those obligations, it would have been inappropriate to enter judgment directly in favor of Paul. Only *668 after those obligations to third parties were satisfied would any funds be available for distribution to the shareholders under the chancellor’s ruling. The judgment further permitted David the opportunity to take credit against any amounts owed the corporation for that portion that he would ultimately have received back upon final dissolution of the corporation. As we interpret the chancellor’s ruling, this has the effect of setting up a priority of payment that would require Paul to receive his entire pro-rata share of amounts due him before David was relieved of his obligations to the corporation or before he was entitled to receive any possible distribution of corporate assets. Finding that Paul suffers no prejudice if the corporate assets recovered from David are distributed in that order of priority, we do not think that the chancellor committed reversible error in entering judgment in favor of the corporation rather than directly in favor of Paul for his pro-rata portion of the recovery.
II.
Issue Two: Credit for Back Salary
¶ 5. Another error urged by Paul is that the chancellor should not have given David credit against any amounts he owed to the corporation for allegedly unpaid salary going back 218 weeks and totaling $43,600, It is undisputed from the record that, for much of this 218 week period, David was not operating the corporation in a manner consistent with his fiduciary duty as an officer of the corporation. In fact, his management efforts during that period caused the ultimate demise of an apparently-profitable corporation by the improper transfer of essentially all of the corporation’s assets and business opportunities to a separate corporation as to which Paul had no ownership rights. It is difficult to determine an equitable basis to award David past due salary covering a time when he seemed intent on destroying the viability of the business for his own private advantage. The applicable Mississippi statute charges a corporate officer with an obligation to “discharge his duties ... in good faith ... in a manner he reasonably believes to be in the best interests of the corporation.... ” Miss.Code Ann. § 79-4-8.42 (Rev.1996). There could hardly be imagined a more egregious case of an abuse of those duties than the record demonstrates' in this case. Perhaps had David seen fit to file a brief and explain why, despite his adjudicated malfeasance, he should nevertheless have the corporation’s salary obligation to him honored, we might discover a legitimate basis to affirm the chancellor on this point. Because no such reason is apparent to this Court in the absence of an appellee’s brief, this Court, as to this issue, follows the rule that the absence of any briefing constitutes confession of error. We, therefore, reverse and render the chancellor’s credit of $43,600 allowed against the amounts otherwise due the corporation by David.
III.
Issues Three and Four: Corporate Real Estate
¶ 6. Paul raises two issues concerning the handling of certain real estate actually owned by the brothers but used in the corporate business. Paul’s dissatisfaction arises out of the relief afforded him based on proof that David permitted the' property to go through foreclosure and then reacquired the title to the exclusion of Paul and put it to use in the newly-formed business owned by David under the name of DMN. The chancellor provided a scheme by which Paul could reacquire his undivided interest in the land if he made certain payments deemed by the chancellor to be equitably chargeable to him. That relief appeared to be based on the rule announced in such cases as Conner v. Conner, 238 Miss. 471, 119 So.2d 240, 259 (1960) and Brown v. Brothers, 231 Miss. 729, 97 So.2d 642, 644 (1957), that a co-tenant engaged in such activities cannot thereby defeat the rights of his co-tenants, *669 but, rather, reacquires the title in a constructive trust for those co-tenants. Our review of the record convinces this Court that the chancellor dealt equitably with both parties in resolving any disputes regarding the real property and we are unconvinced that Paul’s arguments of error have sufficient weight to require us to upset the chancellor’s seemingly fair resolution of the issue. We, therefore, decline to disturb this aspect of the chancellor’s ruling.
IV.
Issue Five: Diversion of Corporate Opportunity
¶ 7. We are unconvinced that the chancellor erred in refusing to require David to account for certain corporate funds allegedly improperly diverted to David’s son for hauling fees connected with the business of FMS. The chancellor found that these payments were in the ordinary course of business, undertaken at a time when the volume of corporate business prevented FMS from performing all of the necessary hauling work with its own internal resources. Paul’s brief does not make a compelling case to the contrary and we affirm this part of the chancellor’s ruling.
V.
Issue Six: Accounting for Misappropriated Funds
¶ 8. The chancellor undertook a detailed analysis of the income and disbursements of a bank account individually owned by David, in which he deposited a large amount of funds actually owned by FMS. The chancellor made findings regarding whether the disbursements out of that account were, in actuality, for legitimate corporate purposes or were, instead, for David’s own private purposes. Based on those determinations, the chancellor ruled that David was liable to the corporation for those amounts found to have been expended for purposes other than bona fide corporate undertakings. On appeal, Paul argues that the chancellor erred in his efforts to divine the legitimacy of a number of checks written in 1995, when those determinations had no basis other than the chancellor’s inspection of the checks themselves. Paul argues that, once it was established that the funds coming into the account were corporate assets, the burden shifted to David to show that any disbursements out of the account were for legitimate purposes. He points out that, by 1995, David had begun operation of DMN, so that merely identifying a check as having been issued for a legitimate business purpose did not meet the burden of showing that it was an expense of FMS, since it was equally as likely by that time that the funds were being expended to meet an obligation of DMN.
¶ 9. We observe that the chancellor said in his ruling that “no one testified about the expenses paid from [this] account in 1995.” He further noted that no invoices to substantiate the purposes of the checks were entered into evidence, but that he was forced to “exercise [his] best judgment to determine which are proper corporate expenses and which are not.” Without a response from David, we find merit in Paul’s assertion that David failed to carry the requisite burden to show that these corporate funds diverted to David’s own individual bank account were, in fact, subsequently expended for legitimate corporate purposes of FMS. David’s failure to refute that facially-valid assertion by factual or legal argument compels us to conclude that, as to this aspect of the case, we must treat David’s silence as a confession of error. Thus, the credit given David in the amount of $29,200.87 for those checks itemized in the chancellor’s ruling is reversed and rendered.
¶ 10. On the other hand, the chancellor appeared to have come to a reasoned conclusion when he ' essentially prorated the amount expended for insurance be *670 tween the time FMS was in business and the time DMN was in business and allowed David a credit of $7,700. As to that aspect of the ruling, we find its presumptive correctness is not overcome merely by Paul’s assertion of error. Nor do we find any compelling legal or factual argument advanced in the appellant’s brief to justify overturning that credit.
VI.
Issue Seven: Personal Liability of Nancy Covington
¶ 11. Paul urges us to find that the chancellor erred when he entered the judgment for repayment of various funds solely against David and not against his wife, Nancy. The evidence is uncontra-dicted that Nancy was an officer of FMS during the entire time that its assets were being improperly diverted to the sole control of David or into DMN, the corporation owned jointly by David and Nancy. Paul points out that most of the checks issued to accomplish this improper diversion of assets were signed by Nancy. The chancellor excused her participation in the events by suggesting that she may not have understood the impropriety of the various actions undertaken by David and was, therefore, nothing more than an unwitting accomplice, for whom no liability ought to be attached. Paul argues that Nancy’s fiduciary duty to the corporation cannot be overcome by mere protestations — or even factual findings — of ignorance of the wrongful nature of David’s activities. We find that argument to have merit, especially in the situation where Nancy, a named appellee, failed to file any brief in opposition to Paul’s assertion. We would agree that a person occupying a position of trust in a corporation has an independent duty to be informed of her obligations to that corporation that cannot be met by blind reliance on the directions of another corporate officer. We, therefore, deem Nancy’s silence as a confession of error and direct that the decision of the chancellor, insofar as it ordered David to repay any sums to the corporation (and insofar as that obligation is altered by this decision of this Court), be amended such that it become the joint and several obligation of David and Nancy.
VII.
Issue Eight: Corporate Liability of DMN
¶ 12. Additionally, Paul alleges that the chancellor erred in not also entering the judgment against DMN since it had wrongfully succeeded to substantially all of the assets and business opportunities of FMS. In particular, Paul points out the potential difficulties of collecting any amounts alleged to be due back to FMS based on the fact the very assets removed from FMS that form the basis for a substantial part of David’s indebtedness will remain under David’s and Nancy’s control in the new corporation, free and clear. To the extent that the chancellor’s judgment determined David’s obligation to pay for corporate assets improperly diverted from FMS to DMN, we would agree that Paul has made a facially-valid argument. In that limited respect, therefore, we conclude that the portion of the judgment so designated (as modified by this opinion) should be jointly against David, Nancy, and their wholly-owned corporation, DMN. For the limited purpose of determining this amount to be reduced to judgment against DMN, this cause is remanded to the trial court.
VIII.
Issue Nine: Attorney’s Fees and Punitive Damages
¶ 13. The chancellor awarded Paul judgment in the sum of $43,508.13 representing accounting and legal fees and expenses associated with the successful prosecution of this action. The chancellor ordered that this amount be recovered from the assets of FMS. Paul now urges that as error, contending that the judgment for attorney’s fees should have been *671 entered directly against David. He relies once again upon Aqua-Culture Tech., Ltd. v. Holly as authority. Aqua-Culture Tech., Ltd. v. Holly, 677 So.2d at 184.
¶ 14. In that case, the court awarded attorney’s fees directly against the improperly-acting shareholder. The shareholder appealed on that issue contending that attorney’s fees are not a proper element of damage under the “American rule” regarding attorney’s fees in litigation. Id. The Mississippi Supreme Court upheld the award on the basis that the shareholder’s conduct was so egregious that it would have supported an award of punitive damages, even though such an award was not made at the trial level, and that attorney’s fees are proper in cases where punitive damages are justified. Id.
¶ 15. In this case, the chancellor declined Paul’s request for punitive damages on the basis that his prolonged inattention to the daily operation of the business helped create the atmosphere where David was able to accomplish his improper aims. Assuming the correctness of the chancellor’s ruling on this aspect of the case, the Aqua-Culture case would have no application. We have reviewed the chancellor’s detailed findings of fact and discussion of the law on the matter of punitive damages and find that aspect of the judgment to be presumptively correct in the face of Paul’s short and largely conclusory argument, unsubstantiated by citation to relevant authority, contained in his brief. We, therefore, affirm the chancellor’s largely discretionary decision that punitive damages would be inappropriate in this case.
¶ 16. The chancellor’s award of attorney’s fees, rather than relying upon David’s egregious misconduct, was based upon statutory provisions regarding corporate dissolutions. Section 79-4-14.34(e) of the Mississippi Code provides that
[ijf the court finds that the petitioning shareholder had probable grounds for relief under paragraphs (ii) or (iv) of Section 79-4-14.30(2), it may award to the petitioning shareholder reasonable fees and expenses of counsel and of any experts employed by him.
Miss.Code Ann. § 79-4-14.34(e) (Rev. 1996).
¶ 17. Section 79-4-14.30(2)(ii) involves cases where “those in control of the corporation have acted ... in a manner that is illegal, oppressive or fraudulent.” Miss. Code Ann. § 79-4-14.30(2)(ii) (Rev.1996).
¶ 18. We find these statutes adequately support the chancellor’s decision to award attorney’s fees against the corporation in dissolution rather than directly against David. Applying the principle of presumptive correctness to the chancellor’s thorough assessment of this aspect of the case, we decline to reverse his decisions to deny punitive damages and to award attorney’s fees against FMS rather than against David directly.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF WINSTON COUNTY IS AFFIRMED IN ALL ASPECTS EXCEPT THAT CREDITS ALLOWED TO APPELLEE, DAVID COVINGTON, IN THE AMOUNTS OF $43,600 FOR BACK SALARY AND $29,200.87 FOR PURPORTED CORPORATE-RELATED EXPENDITURES ARE REVERSED AND RENDERED AND THE APPELLEE, DAVID COVINGTON’S OBLIGATION TO FORKLIFT MACHINE SALES, INC. IS INCREASED BY THOSE AMOUNTS. ADDITIONALLY, THE JUDGMENT IS MODIFIED SUCH THAT ALL AMOUNTS OWED BY DAVID COVINGTON TO SAID FORKLIFT MACHINE SALES, INC. SHALL, IN ADDITION, BE THE JOINT AND SEVERAL OBLIGATION OF THE APPELLEE, NANCY COV-INGTON. ADDITIONALLY, THAT PORTION OF THE AFORESAID SUM THAT REPRESENTS REIM *672 BURSEMENT TO FORKLIFT MACHINE SALES, INC. FOR PERSONALTY AND EQUIPMENT DIVERTED FROM FORKLIFT MACHINE SALES, INC. TO DMN CORPORATION IS REDUCED TO JUDGMENT AGAINST DMN CORPORATION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ„ concur.